# EXHIBIT B

**Recano Declaration**

```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                               :
In re:                                         : Chapter 11
                                               :
METRO-GOLDWYN-MAYER STUDIOS INC.,              : Case No. 10-15774 (SMB)
et al.,                                        :
                                               :
            Debtors.                           : (Motion for Joint Administration
                                               : Pending)
                                               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
```

**DECLARATION OF LOUIS A. RECANO IN SUPPORT OF DEBTORS' APPLICATION FOR ORDER UNDER 28 U.S.C. § 156(c), FED. R. BANKR. P. 2002, S.D.N.Y. LBR 5075-1, AND GENERAL ORDER M-409 AUTHORIZING RETENTION AND APPOINTMENT OF DONLIN, RECANO & COMPANY, INC. TO ACT AS CLAIMS AND NOTICING AGENT**

I, Louis A. Recano hereby declare that the following is true to the best of my knowledge, information, and belief:

1. I am the Chief Executive Officer of Donlin, Recano & Company, Inc. (the "Company"), whose offices are located at 419 Park Avenue South, New York, New York 10016, telephone number (212) 481-1411. I am duly authorized to make this declaration on behalf of the Company. Except as otherwise indicated, I have personal knowledge of the matters set forth herein and, if called as a witness, I would testify competently thereto.

2. I submit this declaration in support of the Debtors' Application for Order under 28 U.S.C. § 156(c), Fed. R. Bankr. P. 2002, S.D.N.Y. LBR 5075-1, and General Order M-409 Authorizing Retention and Appointment of Donlin, Recano & Company, Inc. to Act as Claims and Noticing Agent, which was filed contemporaneously herewith (the "Application").[1]

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Application.

3. As noticing and, to the extent needed, claims agent in these cases (the "Noticing and Claims Agent"), at the request of the Debtors or the Office of the Clerk of the Bankruptcy Court for the Southern District of New York (the "Clerk") and to the extent necessary, the Company will, among other things, serve notices on parties in interest or as otherwise directed by the Court on behalf of the Debtors or the Clerk, and perform certain claims administration services, to the extent needed.

4. The Company is one of the country's leading chapter 11 administrators, with experience in noticing, claims administration, and other administrative aspects of chapter 11 cases. The Company has substantial experience in matters of this size and complexity, and has acted as the official noticing and claims agent in many large bankruptcy cases pending in this District and other districts nationwide. See, e.g., In re Graphics Properties Holdings, Inc (f/k/a Silicon Graphics, Inc.), et al, Case No. 09-11701 (MG) (Bankr. S.D.N.Y. 2009); In re Quebecor World (USA) Inc., et al, Case No. 08-10152 (JMP) (Bankr. S.D.N.Y. 2008); In re Ciena Capital LLC, et al., Case No. 08-13783 (AJG) (Bankr. S.D.N.Y. 2008); In re M. Fabrikant & Sons, Inc., et al., Case No. 06-12737 (SMB) (Bankr. S.D.N.Y. 2006); In re New York Westchester Square Medical Center, Case No. 06-13050 (SMB) (Bankr. S.D.N.Y. 2006); In re The Penn Traffic Company, Case No. 03-22945 (ASH) (Bankr. S.D.N.Y. 2003); and In re US Airways, Inc., (SSM) Case No. 04-13819 (Bankr. E.D.Va. 2004).

5. The Company represents, among other things, as follows:

(a) the Company is not a creditor of the Debtors;

(b) the Company will not consider itself employed by the United States government and will not seek any compensation from the United States government in its capacity as the Noticing and Claims Agent in these chapter 11 cases;

(c) by accepting employment in these chapter 11 cases, the Company waives any rights to receive compensation from the United States government;

(d) in its capacity as the Noticing and Claims Agent in these chapter 11 cases, the Company will not be an agent of the United States and will not act on behalf of the United States;

(e) the Company will not employ any past or present employees of the Debtors in connection with its work as the Noticing and Claims Agent in these chapter 11 cases;

(f) in its capacity as the Noticing and Claims Agent in these chapter 11 cases, the Company will not intentionally misrepresent any fact to any person; and

(g) none of the services provided by the Company as the Noticing and Claims Agent will be at the expense of the Clerk.

6. The Debtors have thousands of creditors, and accordingly, the Company may have rendered and may continue to render services to certain of these creditors. The Company has not and will not represent the separate interests of any such creditor in these cases. Additionally, the Company's employees may, in the ordinary course of their personal affairs, have relationships with certain creditors of the Debtors. For example, one or more of the Company's employees may have obligations outstanding with financial institutions that are creditors of the Debtors.

7. The Company is a division of DF King Worldwide ("King Worldwide"). King Worldwide is a global financial communications and stakeholder management company. Within the King Worldwide corporate structure, the Company operates as a separate, segregated business unit. As such, any relationships that King Worldwide and its divisions maintain do not create an interest of the Company that would be materially adverse to the Debtors' estates or any class of creditors or equity security holders.

8. To the best of my knowledge, information, and belief, the Company has no connections with the Debtors' creditors or equity interest holders, any other party-in-interest, their respective attorneys and accountants, any United States Bankruptcy Judge for the Southern

District of New York, the United States Trustee for the Southern District of New York, or any person employed by that office of the United States Trustee, that would conflict with the scope of the Company's retention or would create any interest adverse to the Debtors' estates or any other party-in-interest.

9. Proposed bankruptcy counsel for the Debtors has provided me with a list of the Debtors' creditors and other parties-in-interest (the "<u>Conflicts List</u>") that it received from the Debtors. I have caused an examination of these records to be made to determine which, if any, of the parties on the Conflicts List, the Company may have represented in the past or may be representing at the present time in totally unrelated matters. This search has disclosed that, to the best of my present knowledge, the Company has not in the past and is not currently representing any of the parties on the Conflicts List.

10. To the best of my knowledge, information, and belief, and except as disclosed herein, the Company neither holds nor represents any interest adverse to the Debtors' estates in connection with any matter on which it would be employed and the Company is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code. The Company will supplement its disclosures to the Court if any facts or circumstances are discovered that would require further disclosure.

11. Notwithstanding anything contained herein, as part of its diverse business, the Company is the noticing, claims and balloting agent for debtors in numerous cases involving many different creditors (including taxing authorities), professionals, including attorneys, accountants, investment bankers and financial consultants, some of which may be creditors or represent creditors and parties-in-interest in these chapter 11 cases. In addition, the Company has in the past and will likely in the future continue working with or against other professionals

involved in these chapter 11 cases in matters unrelated to these chapter 11 cases. Based upon my current knowledge of the parties involved, and to the best of my knowledge, none of these business relations constitute interests adverse to that of the creditors, or the Debtors' estates, with respect to the matter upon which the Company is to be engaged.

12. Prior to the Petition Date, the company performed certain professional services for the Debtors in connection with the solicitation of votes for the Plan. For such prepetition services, the Debtors have made payment to the Company as invoiced and have made an advance payment to the Company in the form of a $50,000 retainer to be drawn down and applied to the Debtors' obligations under the Agreement.

13. In performing services as the Noticing and Claims Agent, the Company will charge the Debtors the rates set forth in the Agreement, which is attached as <u>Exhibit C</u> to the Application. The rates set forth therein are at least as favorable as the rates that the Company charges in cases in which it has been retained to perform similar services.

14. The Company will comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 28, 2010

/s/ *Louis A. Recano*
Louis A. Recano
Chief Executive Officer
Donlin, Recano & Company, Inc.

5