SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP
Jay M. Goffman
Four Times Square
New York, New York 10036
(212) 735-3000

Nick P. Saggese
Rick C. Madden
Glenn S. Walter
300 South Grand Avenue
Suite 3400
Los Angeles, California 90071
(213) 687-5000

and

KLEE, TUCHIN, BOGDANOFF & STERN LLP
Kenneth N. Klee
Michael L. Tuchin
1999 Avenue of the Stars
Thirty-Ninth Floor
Los Angeles, California 90067
(310) 407-4000

Proposed Counsel for Debtors and
 Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
: 
In re: : Chapter 11
: 
METRO-GOLDWYN-MAYER STUDIOS INC., : Case No. 10-15774 (SMB)
et al., :
: 
            Debtors. : (Motion for Joint Administration Pending)
: 
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEBTORS' MOTION FOR ORDER DETERMINING ADEQUATE ASSURANCE OF PAYMENT FOR FUTURE UTILITY SERVICES AND GRANTING RELATED RELIEF**

Metro-Goldwyn-Mayer Studios Inc. and certain of its affiliates, the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"),[1] hereby move (the "Motion") the Court for entry of an interim order, substantially in the form attached hereto as Exhibit B (the "Interim Order"), and a final order, substantially in the form attached hereto as Exhibit C (the "Final Order" and, collectively with the Interim Order, the "Orders"), determining adequate assurance of payment for future utility services under section 366 of title 11 of the United States Code (the "Bankruptcy Code") and granting related relief. In support of the Motion, the Debtors rely upon and incorporate by reference the Declaration of Stephen F. Cooper, a member of the Office of the Chief Executive Officer of MGM Holdings Inc., and the Declaration of Steve Hendry, Senior Executive Vice President, Finance of MGM Holdings Inc. (together, the "First-Day Declaration"), filed with the Court concurrently herewith. In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are sections 105(a) and 366 of the Bankruptcy Code.

**BACKGROUND**

3. The Debtors are engaged primarily in the development, production, and worldwide distribution of feature films, television programming, interactive media, music, and

---

[1] The names of the Debtors in these cases, which the Debtors are separately seeking to have jointly administered, are identified on Exhibit A hereto.

licensed merchandise. The Debtors' film and television library (the "MGM Library") contains approximately 4,100 theatrically released feature film titles and approximately 10,800 television episodes and is one of the largest collections of post-1948 feature films in the world. Films in the MGM Library have won over 200 Academy Awards, including fifteen Best Picture Awards. The MGM Library also contains rights to many iconic film and television franchises, including twenty-four titles in the *James Bond* film franchise, six titles in the *Rocky* film franchise, and with respect to the *Stargate* franchise, one film, two direct-to-video titles and several television series, including *Stargate SG-1*, the longest running science fiction series in U.S. television history.

4. On the date hereof (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code. The factual background regarding the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of these chapter 11 cases, is set forth in detail in the First-Day Declaration.

5. The Debtors continue to operate their businesses and manage their properties as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases. As of the date hereof, no creditors' committee has been appointed.

6. On the Petition Date, the Debtors filed with the Court, among other things, (a) a joint prepackaged plan of reorganization (the "Plan") and (b) a disclosure statement related thereto. The Plan provides for the payment in full of all allowed general unsecured claims against the Debtors.

## RELIEF REQUESTED

7. By this Motion, the Debtors seek entry of the Interim Order and the Final Order (a) determining that the Proposed Adequate Assurance (defined below) furnishes utility providers (the "Utility Providers") with adequate assurance of payment within the meaning of section 366 of the Bankruptcy Code, (b) establishing the Adequate Assurance Procedures (defined below), (c) prohibiting the Utility Providers from altering, refusing, or discontinuing services to, and from discriminating against, the Debtors on account of prepetition charges or any perceived inadequacy of the Proposed Adequate Assurance, (d) determining that the Debtors are not required to provide any additional assurance of payment beyond that proposed in this Motion, and (e) setting a final hearing (the "Final Hearing") on the relief sought in this Motion and approving the form of notice of the Final Hearing (the "Final Hearing Notice") attached to the Interim Order.

8. The Debtors request that any relief granted with respect to this Motion apply to any additional debtor in these chapter 11 cases (each, an "Additional Debtor") without further order of the Court. The Debtors propose that a debtor be deemed to be an Additional Debtor upon the filing of a motion to have such debtor's chapter 11 case jointly administered with the chapter 11 cases of the Debtors.

**A.  The Proposed Adequate Assurance**

9. As was their practice before the Petition Date, the Debtors fully intend to pay all postpetition obligations owed to the Utility Providers in a timely manner. Moreover, the Debtors expect that cash from operations, along with any amounts on deposit with the Utility Providers, will be sufficient to pay such postpetition utility obligations. Indeed, in order to

confirm and consummate the Plan, the Debtors must pay allowed administrative expense claims in full.

10. Although the Debtors maintain that the foregoing provides sufficient adequate assurance of payment, the Debtors propose to deposit an aggregate of $48,400 (the "Adequate Assurance Deposit") into a newly created, segregated, interest-bearing account (the "Adequate Assurance Deposit Account") within twenty (20) days following the Petition Date. The Adequate Assurance Deposit will be held for the benefit of the Utility Providers during these chapter 11 cases. The amount of the Adequate Assurance Deposit equals the estimated aggregate cost of one month of utility service, calculated based on a historical average over the past twelve (12) months.

11. The Adequate Assurance Deposit, as well as any other adequate assurance that the Debtors may provide in accordance with the procedures described below, attributable to each Utility Provider shall be returned to the Debtors on the effective date of the Plan, if such deposit or other form of adequate assurance has not already been applied or returned.

12. The Debtors submit that the Adequate Assurance Deposit, together with the Debtors' demonstrated ability to pay for future utility services in the ordinary course of business (collectively, the Adequate Assurance Deposit and such ability to pay for future utility services, the "Proposed Adequate Assurance"), provides sufficient adequate assurance to the Utility Providers. Accordingly, the Debtors request that the Court deem each Utility Provider to have received adequate assurance of payment within the meaning of section 366 of the Bankruptcy Code unless and until (a) the Debtors, in their sole discretion, agree to an alternative assurance of payment with the Utility Provider or (b) the Court enters an order requiring that additional adequate assurance of payment be provided.

13. If any Utility Provider believes additional assurance is required, then that Utility Provider may request such additional assurance pursuant to the Adequate Assurance Procedures set forth below.

**B. The Adequate Assurance Procedures**

14. Although the Proposed Adequate Assurance is sufficient under section 366 of the Bankruptcy Code, the Debtors anticipate that certain Utility Providers might disagree and therefore request additional assurance of payment. Accordingly, the Debtors propose to address any such requests in accordance with the following procedures (collectively, the "Adequate Assurance Procedures"):

(a) Within three (3) business days after entry of the Interim Order, the Debtors will send via first-class mail a copy of the Interim Order, along with notice of the final hearing on the Motion in the form attached as Exhibit 1 to the Interim Order, to the Utility Providers set forth in the list attached hereto as Exhibit D (the "Utility List") and to the Notice Parties (defined below).

(b) If a Utility Provider is not satisfied with the Proposed Adequate Assurance and seeks additional assurance of payment, such Utility Provider must serve a request (an "Additional Assurance Request") so that it is received by the following parties (collectively, the "Notice Parties") at the following addresses:

   (i) the Debtors, c/o Metro-Goldwyn-Mayer Studios Inc., 10250 Constellation Boulevard, Los Angeles, CA 90067-6421, Attn: Barbara Van Sickle;

   (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, NY 10036, Attn: Jay M. Goffman, and 300 South Grand Avenue, Suite 340 Los Angeles, CA 90071, Attn: Glenn S. Walter;

   (iii) counsel to the Debtors, Klee, Tuchin, Bogdanoff & Stern LLP, 1999 Avenue of the Stars, 39th Floor, Los Angeles, CA 90067, Attn: Michael L. Tuchin;

   (iv) the Office of the United States Trustee, 33 Whitehall Street, 21st Floor, New York, NY 10004;

   (v) the parties listed in the consolidated list of fifty (50) largest unsecured creditors filed by the Debtors in these bankruptcy cases, or if any official

committee of unsecured creditors has been appointed, counsel to such committee;

(vi) counsel to any other official committee appointed in these bankruptcy cases; and

(vii) counsel to JPMorgan Chase Bank, N.A., the administrative agent under the Debtors' prepetition credit agreement, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, NY 10017-3954, Attn: Peter V. Pantaleo and Nicholas Baker.

(c) Any Additional Assurance Request must be or do the following:

(i) be in writing;

(ii) set forth the location at which the applicable utility services are provided;

(iii) identify a contact person with whom the Debtors may discuss the Additional Assurance Request, and provide the contact person's physical address, phone number, facsimile number, and electronic mail address;

(iv) summarize the Debtors' payment history relevant to the affected account(s), including any applicable security deposits;

(v) explain the basis for the Utility Provider's belief that the Proposed Adequate Assurance is not sufficient adequate assurance of future payment;

(vi) set forth what the Utility Provider believes would be sufficient adequate assurance of payment and explain the basis for its position; and

(vii) be actually received by each of the Notice Parties within thirty (30) days after entry of the Interim Order.

(d) Upon the Debtors' receipt of any Additional Assurance Request at the addresses set forth above, the Debtors shall have the greater of (i) twenty (20) days from receipt of the Additional Assurance Request and (ii) forty-five (45) days from the Petition Date (collectively, the "Resolution Period") to negotiate with the applicable Utility Provider regarding a potential resolution of such Additional Assurance Request.

(e) In their sole discretion, and without further Court order, the Debtors may (i) resolve any Additional Assurance Request by mutual agreement with the requesting Utility Provider, and (ii) in connection with any such resolution, provide a Utility Provider with additional assurance of future payment in such form as the Debtors deem appropriate.

(f) If the Debtors determine in their discretion that the Additional Assurance Request is not reasonable, and do not reach any resolution with the requesting Utility Provider during the Resolution Period, the Debtors, during or immediately after the Resolution Period, may request a hearing before the Court to determine the adequacy of assurance of payment under section 366(c)(3) of the Bankruptcy Code (the "<u>Determination Hearing</u>") with respect to a particular Utility Provider.

(g) Pending resolution of the applicable Determination Hearing, each Utility Provider that submitted an Additional Assurance Request shall be prohibited from altering, refusing, or discontinuing services to, and from discriminating against, the Debtors on account of prepetition charges or any perceived inadequacy of the Proposed Adequate Assurance.

15. The Debtors propose that all Utility Providers that do not timely file an objection to the Motion be deemed to consent to the Adequate Assurance Procedures and shall be bound by the Final Order, and that the sole recourse of any Utility Provider that does not timely object to the Motion be limited to submitting an Additional Assurance Request pursuant to the Adequate Assurance Procedures.

**C.    The Final Hearing**

16. In the past, utility providers generally bore the burden of arguing that the proposed form of adequate assurance under section 366 of the Bankruptcy Code was insufficient. As discussed below, however, section 366 of the Bankruptcy Code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("<u>BAPCPA</u>"), now arguably shifts to debtors the burden of providing adequate assurance that a utility provider finds satisfactory and seeking court review if a utility provider rejects the proposed adequate assurance. Under such a reading of amended section 366 of the Bankruptcy Code, a Utility Provider could theoretically, on the 29th day following the Petition Date, assert that the Proposed Adequate Assurance is not acceptable and threaten to terminate service the following day if the Debtors do not comply with that Utility Provider's demands for additional assurance of payment. Although the Debtors do not concede the validity of such an interpretation of amended section

366 of the Bankruptcy Code, the Debtors believe that it is appropriate to require that Utility Providers raise any objections to the Adequate Assurance Procedures so that any such objections may be heard within thirty (30) days following the Petition Date.

17. In order to resolve any objections to the Adequate Assurance Procedures within thirty (30) days after the Petition Date, the Debtors request that a final hearing on the Motion be scheduled for a date within such thirty-day period and that the Court enter a Final Order on this Motion at or after such hearing. As noted above, the Debtors will serve the Interim Order and the Final Hearing Notice on the Utility Providers listed on the Utility List within three (3) business days after entry of the Interim Order.

D.  **Modifications to the Utility List**

18. Although the Debtors have made reasonable efforts to include all of their Utility Providers in the Utility List, it is possible that the Debtors included non-utility entities in, or inadvertently omitted certain Utility Providers from, the Utility List. Accordingly, the Debtors seek authority to modify the Utility List, in their sole discretion, by adding or removing Utility Providers to and from the Utility List. The Debtors shall add an amount equal to one month's costs for the applicable utility service to the Adequate Assurance Deposit Account for each subsequently added Utility Provider and shall file with the Court a supplement to the Utility List reflecting any such additions (a "<u>Supplement</u>"). Within five (5) business days after the filing of a Supplement, the Debtors will serve the Interim Order (or the Final Order, if entered), this Motion, and the applicable Supplement on the added Utility Provider.

19. If the Debtors and a particular Utility Provider agree to some other form of adequate assurance, the Debtors shall be authorized to subtract or modify the applicable amount of the Adequate Assurance Deposit accordingly and to provide such other form of agreed-upon adequate assurance. If a Utility Provider is removed from the Utility List or the underlying

9

utility service is terminated, (a) the Debtors shall be authorized immediately to withdraw the applicable amount of the Adequate Assurance Deposit, and (b) within five (5) business days following the date that the Debtors provide notice to a Utility Provider that it has been removed from the Utility List or that the applicable utility service is terminated, such Utility Provider shall cause to be returned or released to the Debtors any other adequate assurance that was provided to such Utility Provider.

20. The Debtors request that the Court make the Interim Order and the Final Order applicable to any Utility Provider that is subsequently added to the Utility List, regardless of when each Utility Provider was added to the Utility List; provided that any subsequently added Utility Provider shall have twenty (20) days from the date of service of the applicable Supplement to serve an Additional Assurance Request in accordance with the Adequate Assurance Procedures.

21. The Debtors shall have the periods specified in the Adequate Assurance Procedures to seek to resolve any such Additional Assurance Request by mutual agreement with the applicable Utility Provider, without further order of the Court, or to schedule a Determination Hearing with the Court to determine the adequacy of assurance of payment with respect to such Utility Provider in accordance with the Adequate Assurance Procedures.

22. The Debtors request that the Court limit the recourse of any Utility Provider, including any subsequently added Utility Providers, to the submission of an Additional Assurance Request pursuant to the Adequate Assurance Procedures. The Debtors also request that the Court prohibit all Utility Providers from altering, refusing, or discontinuing services to, and from discriminating against, the Debtors on account of prepetition charges or any perceived inadequacy of the Proposed Adequate Assurance, absent further order of the Court.

23. Nothing in this Motion or the Orders, and no payment by the Debtors pursuant to the Orders, shall be deemed or construed as (a) any waiver of the Debtors' rights to assert that any entity now or later listed in the Utility List is not a "utility" within the meaning of section 366 of the Bankruptcy Code; (b) any admission as to the validity or priority of any claim against any of the Debtors; (c) any waiver of the Debtors' rights to dispute any claim; or (d) any approval or assumption of any executory contract or unexpired lease under section 365 of the Bankruptcy Code.

## BASIS FOR RELIEF

24. In the ordinary course of business, the Debtors obtain water, gas, electricity, telephone, and other utility products and services from over 20 Utility Providers, through approximately 44 accounts. The Utility List, which is attached hereto as <u>Exhibit D</u>, lists the Utility Providers. On average, the Debtors spend a total of approximately $48,400 each month on utility costs. As of the Petition Date, the Debtors estimate that up to approximately $48,400 in utility costs may be outstanding.

25. The Utility Providers provide services that are crucial to the Debtors' continuing business operations and reorganization efforts. The Debtors recognize that section 366 of the Bankruptcy Code is intended to provide certain protections to the Utility Providers, while giving the Debtors an opportunity to address adequate assurance of payment issues free from the threat of imminent termination of utility services. The Debtors maintain that the relief requested herein strikes a fair balance between the rights of Utility Providers and the Debtors' need for uninterrupted utility services. Under the circumstances, including the absence of any material prejudice to the Utility Providers, the Debtors request that the Court grant the relief sought in this Motion.

## APPLICABLE AUTHORITY

A. **The Proposed Adequate Assurance Provides the Utility Providers with Adequate Assurance of Payment under Section 366 of the Bankruptcy Code**

26. Section 366 of the Bankruptcy Code provides a statutory framework designed to balance the Debtors' need for continued and uninterrupted utility service against utility providers' desire for assurance of payment. See 11 U.S.C. § 366. Section 366(a) of the Bankruptcy Code provides as follows:

> Except as provided in subsections (b) and (c) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.

11 U.S.C. § 366(a).

27. Under section 366(c)(2) of the Bankruptcy Code, which Congress enacted as part of BAPCPA, a utility may alter, refuse, or discontinue utility service if that utility does not receive "adequate assurance of payment for utility service that is satisfactory to the utility" during the thirty-day period following the petition date. 11 U.S.C. § 366(c)(2).

28. Section 366 of the Bankruptcy Code protects debtors from utility-service cutoffs upon the filing of a bankruptcy case, while providing utility companies with adequate assurance that the debtor will pay for postpetition services. See H.R. Rep. No. 95-595, at 350 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6306. Accordingly, section 366 of the Bankruptcy Code prohibits utilities from altering, refusing, or discontinuing services to a debtor solely on account of unpaid prepetition amounts for a period of thirty (30) days after a chapter 11 filing. 11 U.S.C. § 366(a). At the same time, it protects utilities by permitting them to alter, refuse, or discontinue service after thirty (30) days if the debtor has not furnished "adequate assurance" of payment in a form "satisfactory" to the utility. 11 U.S.C. § 366(c)(2).

29. As revised by BAPCPA, section 366(c) of the Bankruptcy Code restricts the factors that a court can consider when determining whether an adequate assurance payment is, in fact, adequate. Specifically, in evaluating the adequacy of an assurance of payment, courts may no longer consider (a) the absence of a security deposit before a debtor's Petition Date, (b) a debtor's history of timely payments, or (c) the availability of an administrative expense priority. 11 U.S.C. § 366(c)(3)(B). Notwithstanding those changes, Congress does not appear to have abrogated a court's ability to determine the required amount of assurance of payment, or to have changed the fundamental requirement that assurance of payment need only be "adequate."

30. Although section 366(c) of the Bankruptcy Code limits the factors a court can consider, it does not limit a court's ability to determine the amount (if any) of payment necessary to furnish the requisite adequate assurance. Instead, section 366(c) of the Bankruptcy Code gives courts the same discretion to determine the payment amount necessary to provide adequate assurance that courts currently have (and previously had) under section 366(b) of the Bankruptcy Code. Compare 11 U.S.C. § 366(b) ("On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.") with 11 U.S.C. § 366(c)(3)(A) ("On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance payment under [section 366(c)(2)].").

31. Furthermore, section 366(b) of the Bankruptcy Code allows courts to determine that no adequate assurance payment at all is necessary to satisfy the adequate assurance of payment requirement. See Virginia Elec. & Power Co. v. Caldor Inc.-N.Y., 117 F.3d 646, 650 (2d Cir. 1997) ("Even assuming that 'other security' should be interpreted narrowly, . . . a bankruptcy court's authority to 'modify' the level of the 'deposit or other security,'

13

provided for under § 366(b), includes the power to require 'no deposit or other security' where none is necessary to provide a utility supplier with 'adequate assurance of payment.'"). Accordingly, even after the BAPCPA amendments to section 366 of the Bankruptcy Code, courts retain discretion to determine the amount (if any) of assurance of payment required under section 366 of the Bankruptcy Code.

32. Moreover, section 366(c), like section 366(b), of the Bankruptcy Code requires only that the assurance of payment for services be "adequate." 11 U.S.C. §§ 363(b)-(c). Courts have recognized that adequate assurance of payment does not require an absolute guarantee of a debtor's ability to pay. See, e.g., In re Adelphia Bus. Solutions, Inc., 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002) ("In determining adequate assurance, a bankruptcy court is not required to give a utility company the equivalent of a guarantee of payment, but must only determine that the utility is not subject to any unreasonable risk of non-payment for postpetition services."); Steinebach v. Tucson Elec. Power Co. (In re Steinebach), 303 B.R. 634, 641 (Bankr. D. Ariz. 2004) ("Adequate assurance of payment is not, however, absolute assurance."). In determining the requisite level of adequate assurance, courts must "focus upon the need of the utility for assurance, and [] require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." Virginia Elec. & Power Co., 117 F.3d at 650 (citation omitted) (emphasis in original); see also In re Penn. Cent. Transp. Co., 467 F.2d 100, 103-04 (3d Cir. 1972) (affirming district court's finding that utility deposit was not required where requiring such utility deposits would likely jeopardize the debtor's continuing operation "merely to give further security to suppliers who already are reasonably protected").

33. Given that uninterrupted utility service is critical to the Debtors' operations, the Debtors remain incentivized and expect to have sufficient funds from operations to pay future utility obligations in the ordinary course of business. The Proposed Adequate Assurance includes a cash deposit in the form of the Adequate Assurance Deposit. Under the circumstances, no other or further assurance of payment is necessary or appropriate. Accordingly, the Debtors request that the Court determine that the Proposed Adequate Assurance is sufficient, adequate assurance of payment within the meaning of section 366 of the Bankruptcy Code.

**B.    The Court Should Approve the Adequate Assurance Procedures**

34. The Court has authority to approve the Adequate Assurance Procedures under section 105(a) of the Bankruptcy Code, which permits to the Court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

35. Through the Adequate Assurance Procedures, the Debtors seek to implement an orderly process for addressing issues relating to the adequate assurance of payment required under section 366 of the Bankruptcy Code. Without the Adequate Assurance Procedures, the Debtors could be forced to address numerous requests by Utility Providers, in a disorganized manner and during a critical period of the Debtors' reorganization efforts. The Adequate Assurance Procedures are therefore essential to minimizing unnecessary administrative and other burdens on and distractions of the Debtors as they pursue confirmation and consummation of the Plan.

36. Moreover, the Adequate Assurance Procedures will help protect the Debtors from potential last-minute leverage plays by the Utility Providers. As noted above, the Debtors could conceivably receive a demand under section 366(c)(2) of the Bankruptcy from a

Utility Provider at or near the end of the applicable thirty-day period and potentially be compelled to accede immediately to that demand or face termination of critical utility services. Clearly, any disruption of utility services would jeopardize the success of the Debtors' reorganization efforts. To protect against such potential disruption, the Debtors request that the Court approve the Adequate Assurance Procedures and schedule the Final Hearing for approximately the twenty-fifth (25th) day, but no later than the thirtieth (30th) day, following the Petition Date.

## REQUEST FOR IMMEDIATE RELIEF

37. Rule 6003 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003; see also In re First NLC Fin. Servs., LLC, 382 B.R. 547, 549 (Bankr. S.D. Fla. 2008) (holding that Bankruptcy Rule 6003 permits entry of retention orders on interim basis to avoid irreparable harm). The Second Circuit has interpreted the language "immediate and irreparable harm" in the context of preliminary injunctions. In that context, the Second Circuit instructed that irreparable harm "'is a continuing harm which cannot be adequately redressed by final relief on the merits' and for which 'money damages cannot provide adequate compensation.'" Kamerling v. Massanari, 295 F.3d 206, 214 (2d Cir. 2002) (quoting N.Y. Pathological & X-Ray Labs., Inc. v. INS, 523 F.2d 79, 81 (2d Cir. 1975)). Further, the "harm must be shown to be actual and imminent, not remote or speculative." Id. See also Rodriguez v. DeBuono, 175 F.3d 227, 234 (2d Cir. 1999). The Debtors submit that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm.

## REQUEST FOR WAIVER OF ANY APPLICABLE STAY

38. As discussed above, the relief sought by this Motion is critical to the Debtors' continuing business operations and is therefore in the best interests of the estates. In order to avoid delay in implementing such relief and the attendant potential harm to the Debtors' business operations, the Debtors request that the Court waive any stay that might apply to an order on this Motion under Bankruptcy Rule 6004(h) or otherwise, such that any order on this Motion will be effective immediately upon entry.

## NOTICE

39. Notice of this Motion has been given to (a) the U.S. Trustee for the Southern District of New York; (b) counsel to the administrative agent under the Debtors' prepetition credit agreement; and (c) the parties listed in the consolidated list of fifty (50) largest unsecured creditors filed by the Debtors in these bankruptcy cases. The Debtors submit that no other or further notice need be provided.

## NO PRIOR REQUEST

40. No prior request for the relief requested herein has been made to this or any other Court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that this Court enter an order (a) granting the relief sought herein on an interim basis, substantially in the form attached hereto as <u>Exhibit B</u>, (b) scheduling a final hearing on the Motion, (c) granting the relief sought herein on a final basis, substantially in the form attached hereto as <u>Exhibit C</u>, and (d) granting such other and further relief as may be just and proper.

Dated: New York, New York
November 3, 2010

SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP

By: */s/ Jay M. Goffman*
Jay M. Goffman
Four Times Square
New York, New York 10036
(212) 735-3000

-and-

Nick P. Saggese
Rick C. Madden
Glenn S. Walter
300 South Grand Avenue
Suite 3400
Los Angeles, California 90071
(213) 687-5000

-and-

KLEE, TUCHIN, BOGDANOFF & STERN LLP

Kenneth N. Klee
Michael L. Tuchin
1999 Avenue of the Stars
Thirty-Ninth Floor
Los Angeles, California 90067
(310) 407-4000

Proposed Counsel for Debtors and
Debtors in Possession