## EXHIBIT C

**Klee Declaration**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                   :

In re:                                       :   Chapter 11
                                   :

METRO-GOLDWYN-MAYER STUDIOS    :   Case No. 10-15774 (SMB)
INC., et al.,                           :
                                   :

                  Debtors.     :   (Jointly Administered)
                                   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DECLARATION OF KENNETH N. KLEE IN SUPPORT OF DEBTORS'
APPLICATION FOR ORDER UNDER 11 U.S.C. §§ 327(a) AND 329 AND FED. R.
BANKR. P. 2014 AND 2016 AUTHORIZING EMPLOYMENT AND RETENTION OF
KLEE, TUCHIN, BOGDANOFF & STERN LLP AS BANKRUPTCY CO-COUNSEL TO
THE DEBTORS EFFECTIVE AS OF PETITION DATE**

I, Kenneth N. Klee, hereby declare that the following is true to the best of my knowledge,

information, and belief:

        1.   I am a partner in the firm of Klee, Tuchin, Bogdanoff & Stern LLP

("KTB&S" or the "Firm"), which maintains offices for the practice of law at 1999 Avenue of the

Stars, 39th Floor, Los Angeles, CA 90067.  I am admitted, practicing, and a member in good

standing of the bars of the State of New York and the United States District Court for the

Southern District of New York.  I submit this declaration in support of the *Debtors' Application*

*for Order Under 11 U.S.C. §§ 327(a) and 329 and Fed. R. Bankr. P. 2014 and 2016 Authorizing*

*Employment and Retention of Klee, Tuchin, Bogdanoff & Stern LLP as Bankruptcy Co-Counsel*

*to the Debtors Effective as of Petition Date* (the "Application"),[1] filed contemporaneously

herewith by the debtors and debtors in possession in the above-captioned cases (collectively, the

---

[1]    Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to them in the
Application.

"Debtors").[2]  Except as otherwise indicated, I have personal knowledge of the matters set forth

herein and, if called as a witness, would testify competently thereto.[3]

## QUALIFICATION OF PROFESSIONALS

2.    Pursuant to an engagement agreement (as amended, the "Engagement

Agreement"), KTB&S has represented the Debtors and certain of their non-debtor affiliates on

various matters since at least 2003.  Commencing in January 2009, KTB&S began working with

the Debtors and their financial and other legal advisors to work out the Debtors' financial

difficulties, including a possible restructuring of the Debtors' financial affairs and capital

structure and, as necessary, preparation of documents related to, and representation in, any

reorganization cases filed under chapter 11 of the Bankruptcy Code.    A copy of the Engagement

Agreement is attached as Exhibit 2 hereto.

3.    KTB&S has worked closely with the Debtors and Skadden, Arps, Slate,

Meagher & Flom LLP ("Skadden, Arps") with respect to the Debtors' restructuring efforts and

has developed a strong familiarity with the Debtors' business affairs and many of the potential

legal issues that may arise in the context of these cases.

4.    KTB&S understands that the Debtors selected KTB&S as their restructuring

bankruptcy co-counsel because of the Debtors' prior experience with KTB&S and KTB&S's

extensive experience and knowledge of the chapter 11 bankruptcy process.  During the course of

its prepetition representation of the Debtors, and in preparing for its representation of the Debtors

in these cases, KTB&S has become familiar with the Debtors' business and financial affairs, the

---

[2]        The names of the Debtors in these jointly administered cases are identified on Exhibit A to the Application.

[3]        Certain of the disclosures herein relate to matters within the knowledge of other attorneys at KTB&S and
are based on information provided by them.

125399.1

Debtors' capital structure, financing documents, and other material agreements, and many of the potential legal issues that may arise in the context of these chapter 11 cases.

5.    KTB&S will continue to carefully coordinate the services provided with Skadden, Arps to avoid unnecessary duplication of services in these cases.

6.    Other professionals of KTB&S, many of whom also have extensive experience in corporate restructuring generally, and debtor representations in reorganization cases specifically, will participate in the representation of the Debtors in these cases, including Michael L. Tuchin, David A. Fidler, and Korin A. Elliott.

7.    Based upon the foregoing, I believe that KTB&S is well positioned to provide the Debtors with the type of legal services they will require as debtors in possession.  Accordingly, subject to this Court's approval of the Application, KTB&S is willing to perform the services requested by the Debtors, as set forth herein, in the Application, and in the Engagement Agreement.

## SERVICES TO BE RENDERED

8.    Because these cases have been filed as prepackaged chapter 11 cases, they will require, if successful, less than the full range of services performed in traditional chapter 11 cases.  Nevertheless, the Debtors have requested that KTB&S and Skadden, Arps continue to represent them with respect to the following services:

(a)    providing legal advice with respect to the Debtors' powers and duties as debtors in possession in the continued operation of their businesses and management of their properties;

(b)    preparing on behalf of the Debtors necessary applications, motions, answers, orders, reports, and other legal papers;

(c)    appearing in Court on behalf of the Debtors and in order to protect the interests of the Debtors before the Court;

(d)    preparing and pursuing confirmation of a plan(s) and approval of a disclosure statement(s) and/or a sale(s) of the Debtors' assets pursuant to section 363 of the Bankruptcy Code; and

3

125399.1

(e)    performing other legal services for the Debtors that may be necessary and proper in these proceedings.

9.    Subject to this Court's approval of the Application, KTB&S is willing to serve as the Debtors' bankruptcy co-counsel and to perform the services described above.

**DISINTERESTEDNESS OF PROFESSIONALS**

10.    To the best of my knowledge, and except as otherwise set forth herein, the partners in, counsel to, and associates of KTB&S, (a) do not have any connection with any of the Debtors, their affiliates, their creditors, or any other party in interest, or their respective attorneys and accountants, the United States Trustee for the Southern District of New York or any person employed in the office of the same, or any judge in the Bankruptcy Court or District Court for the Southern District of New York or any person employed in the offices of the same; (b) are "disinterested persons," as that term is defined in section 101(14) of the Bankruptcy Code, as modified by Bankruptcy Code section 1107(b); and (c) do not hold or represent any interest adverse to the estates.

11.    Prior to the commencement of these cases, KTB&S conducted a "conflict check" with respect to the following categories of entities or individuals (the "Identified Parties"), as identified by the Debtors or as ascertained from a review of available documents:[4]

(a)  the Debtors;

(b)  the Debtors' non-debtor affiliates;

(c)  the Debtors' officers and directors;

(d)  those entities holding a direct ownership interest in the Debtors;

(e)  the professionals representing the Debtors;

---

[4]    KTB&S will continue to review its records with respect to other parties in interest and shall promptly notify this Court by a supplemental declaration if any such connection is discovered.

125399.1

(f)   the Debtors' insurance providers;

(g)   the Debtors' secured creditors;

(h)   the Debtors' utility providers;

(i)   the Debtors' fifty (50) largest unsecured creditors;

(j)   the Debtors' leading providers of goods and services;

(k)   professionals representing other key parties in interest;

(l)   certain parties to significant contracts and/or real and personal property leases with the Debtors;

(m)   the Plan investors/sponsors;

(n)   counterparties to certain collective bargaining agreements with the Debtors;

(o)   entities in possession of property of the Debtors, including landlords with security deposits;

(p)   banks at which the Debtors maintain accounts;

(q)   certain identified entities possessing other relationships to the Debtors, including joint ventures with the Debtors; and

(r)   employees of the Office of the United States Trustee and United States Bankruptcy Court for the Southern District of New York.

12.    KTB&S utilizes two procedures to determine its relationships, if any, to

parties that may have connections to a case.  Specifically, KTB&S uses computer software to

search the "case conflict memoranda" that it has prepared and maintained over the years in order

to identify potential relationships.  KTB&S also inquires of attorneys with the firm whether any

relationships exist that may escape scrutiny utilizing the software-based process on which the

Firm principally relies.  KTB&S's "conflict check" with respect to the Identified Parties has

revealed that it represents, or formerly represented, the entities or individuals listed in the

125399.1

following paragraphs, or entities or individuals that are affiliates of the entities or individuals

listed in the following paragraphs.[5]

(a)    KTB&S has represented in the past and currently represents Viacom, Paramount Pictures, MTV Networks and their affiliated entities in unrelated matters. Under no circumstances will KTB&S represent Viacom, Paramount Pictures and their affiliated entities in connection with the Debtors or their chapter 11 cases. Moreover, KTB&S has a waiver that would permit it to be adverse to Viacom, Paramount Pictures, MTV Networks and their affiliated entities in these cases.

(b)    KTB&S has represented in the past and currently represents Cerberus Capital Management, Ableco Finance LLC and certain of their affiliated funds in unrelated matters. Under no circumstances will KTB&S represent Cerberus Capital Management, Ableco Finance LLC and/or their affiliated funds in connection with the Debtors or their chapter 11 cases. Moreover, KTB&S has a waiver that would permit it to be adverse to Cerberus Capital Management, Ableco Finance LLC and their affiliated funds in these cases.

(c)    KTB&S has represented in the past and currently represents Angelo Gordon & Co. in unrelated matters. Under no circumstances will KTB&S represent Angelo Gordon & Co. in connection with the Debtors or their chapter 11 cases. Moreover, KTB&S has a waiver that would permit it to be adverse to Angelo Gordon & Co. in these cases.

(d)    KTB&S currently represents The TCW Group, which may be affiliated with TCW Asset Management Co., in an unrelated matter. Under no circumstances will KTB&S represent The TCW Group in connection with the Debtors or their chapter 11 cases. Moreover, KTB&S has a waiver that would permit it to be adverse to The TCW Group in these cases.

(e)    I recently served as the examiner, and KTB&S represented me in that capacity, in the chapter 11 cases of the Tribune Company (*In re Tribune Company, et al.*, Case No. 08-13141, Bankr. D. Del.). One or more of the Debtors in these chapter 11 cases hold claims against the Tribune Company and/or its affiliated chapter 11 debtors. KTB&S does not represent the Tribune Company or any of its affiliated chapter 11 debtors.

(f)    KTB&S previously represented Twentieth Century Fox (over a decade ago). KTB&S does not currently represent Twentieth Century Fox and under no circumstances will KTB&S represent Twentieth Century Fox in connection with the Debtors or their chapter 11 cases. KTB&S is free to be adverse to Twentieth Century Fox in these cases.

(g)    KTB&S previously represented Lions Gate in unrelated matters. KTB&S does not currently represent Lions Gate and under no circumstances will KTB&S represent Lions Gate in connection with the Debtors or their chapter 11 cases. KTB&S is free to be adverse to Lions Gate in these cases.

---

[5]    The identification and classification herein of various entities or individuals as falling within certain categories is not intended and should not be deemed to be an admission of the legal rights or status of any particular individual or entity.

6

(h)   KTB&S previously represented Levine Leichtman Capital Partners in unrelated matters.  KTB&S does not currently represent Levine Leichtman Capital Partners and under no circumstances will KTB&S represent Levine Leichtman Capital Partners in connection with the Debtors or their chapter 11 cases.  KTB&S is free to be adverse to Levine Leichtman Capital Partners in these cases.

(i)   KTB&S previously represented Morgan Stanley in unrelated matters.  KTB&S does not currently represent Morgan Stanley and under no circumstances will KTB&S represent Morgan Stanley in connection with the Debtors and their chapter 11 cases.  KTB&S is free to be adverse to Morgan Stanley in these cases.

(j)   KTB&S previously represented HSBC Bank USA, which may be affiliated with HSBC Holdings PLC, in unrelated matters.  KTB&S does not currently represent HSBC Bank USA and under no circumstances will KTB&S represent HSBC Bank USA in connection with the Debtors or their chapter 11 cases.  KTB&S is free to be adverse to HSBC Bank USA in these cases.

(k)   KTB&S previously represented Bank of New York in unrelated matters.  KTB&S does not currently represent Bank of New York and under no circumstances will KTB&S represent Bank of New York in connection with the Debtors and their chapter 11 cases.  KTB&S is free to be adverse to Bank of New York in these cases.

(l)   KTB&S previously represented an individual that does not appear on the list of Identified Parties, on behalf of Federal Insurance Company, in unrelated matters.  KTB&S does not currently represent this individual or Federal Insurance Company and under no circumstances will KTB&S represent the individual or Federal Insurance Company in connection with the Debtors or their chapter 11 cases.  KTB&S is free to be adverse to these parties in these cases.

(m)   KTB&S previously represented Gibson, Dunn & Crutcher, LLP in unrelated matters.  KTB&S does not currently represent Gibson, Dunn & Crutcher, LLP and under no circumstances will KTB&S represent Gibson, Dunn & Crutcher, LLP in connection with the Debtors or their chapter 11 cases.  KTB&S is free to be adverse to Gibson, Dunn & Crutcher, LLP in these cases.

(n)   KTB&S previously represented Houlihan Lokey Howard & Zukin in unrelated matters.  KTB&S does not currently represent Houlihan Lokey Howard & Zukin and under no circumstances will KTB&S represent Houlihan Lokey Howard & Zukin in connection with the Debtors or their chapter 11 cases.  KTB&S is free to be adverse to Houlihan Lokey Howard & Zukin in these cases.

(o)   A partner in KTB&S, Daniel J. Bussel, previously served as an expert witness in unrelated litigation on behalf of Nomura Asset Capital Corp. and Nomura Asset Securitization Corp.  KTB&S does not currently represent Nomura Asset Capital Corp. and Nomura Asset Securitization Corp. and under no circumstances will KTB&S represent Nomura Asset Capital Corp. and Nomura Asset Securitization Corp. in connection with the Debtors or

7

their chapter 11 cases.  KTB&S is free to be adverse to Nomura Asset Capital Corp. and Nomura Asset Securitization Corp. in these cases.

(p)   Daniel J. Bussel and I previously served as expert witnesses in unrelated litigation on behalf of Lloyd's of London.  KTB&S does not currently represent Lloyd's of London and under no circumstances will KTB&S represent Lloyd's of London in connection with the Debtors or their chapter 11 cases.  KTB&S is free to be adverse to Lloyd's of London in these cases.

(q)   KTB&S previously represented Citibank (South Dakota), N.A., which KTB&S believes is affiliated with Citibank, N.A., in unrelated matters.  KTB&S does not currently represent Citibank (South Dakota), N.A. or Citibank, N.A. and under no circumstances will KTB&S represent Citibank (South Dakota), N.A. or Citibank N.A. in connection with the Debtors or their chapter 11 cases.  KTB&S is free to be adverse to Citibank (South Dakota), N.A. and Citibank N.A. in these cases.

(r)   I previously was engaged as an expert witness by counsel for Ernst and Young LLP in an unrelated matter.  That representation is concluded and KTB&S is free to be adverse to Ernst and Young LLP.

(s)   David M. Stern, prior to joining KTB&S as a partner, represented Danjaq LLC as a party in interest in a 1989 involuntary bankruptcy case filed against one or more of the Debtors, which case subsequently was dismissed.  As a partner in KTB&S, Mr. Stern also has represented Danjaq LLC in an unrelated matter.  KTB&S does not currently represent Danjaq LLC and under no circumstances will KTB&S represent Danjaq LLC in connection with the Debtors or their chapter 11 cases.  KTB&S is free to be adverse to Danjaq LLC in these cases.

(t)   In connection with KTB&S's prior representation of an ad hoc committee of second lien lenders in an unrelated matter, KTB&S was directly engaged by American Capital and Blackrock.  KTB&S does not currently represent American Capital or Blackrock and under no circumstances will KTB&S represent American Capital or Blackrock in connection with the Debtors or their chapter 11 cases.  KTB&S is free to be adverse to American Capital and Blackrock in these cases.

(u)   In connection with KTB&S's prior representation of the agent and lenders under an unrelated credit facility, KTB&S was directly engaged by the following lenders thereunder: (i) Babson CLO Ltd. 2003-I, Babson CLOT Ltd. 2005-I, Babson Ltd. 2005-III for which Babson Capital Management LLC served as Collateral Manager; Massachusetts Mutual Life Insurance Company and Massmutual Asia Limited, for which Babson Capital Management LLC served as Investment Advisor, (ii) Golub Capital Master Funding LLC; (iii) Golub Capital Loan Trust 2005-I and Golub Capital Partners Funding 2007-I Ltd. for which Golub Capital Incorporated served as Servicer; (iv) Golub International Loan Ltd. I for which Golub Capital International Management LLC served as Collateral Manager; (v) Bridgeport CLO Ltd., Cumberland II CLO Ltd., Forest Creek CLO Ltd., Long Grove CLO Ltd., Market Square CLO Ltd., Marquette Park CLO Ltd., and Rosemont CLO Ltd., for which Deerfield Capital Management LLC served as Collateral Manager; and (vi) Callidus Debt Partners CLO Fund III,

8

125399.1

Ltd., Callidus Debt Partners CLO Fund IV, Ltd., Maps CLO Fund I, LLC, and Maps CLO Fund II, LLC, for which Callidus Capital Management, LLC served as Collateral Manager. KTB&S does not currently represent any of these entities and under no circumstances will KTB&S represent any of them in connection with the Debtors or their chapter 11 cases. KTB&S is free to be adverse to all of these entities in these cases.

(v)   Over the years, KTB&S has represented and currently represents both formal and ad hoc groups of creditors in unrelated matters, in which parties included among the Identified Parties were or are members; provided, however, that KTB&S did not or does not serve as counsel to such parties unless otherwise noted above. Likewise, KTB&S has represented and currently represents agent-lenders and non-agent lenders, in unrelated lending facilities under which parties listed among the Identified Parties also were or are agents and/or lenders but not clients of KTB&S.

(w)   Since the formation of KTB&S over 11 years ago, and over the course of the lengthy careers of the lawyers comprising KTB&S (including mine), KTB&S and its attorneys have represented, now represent, and likely will represent in the future parties adverse to many of the creditors, professionals, equity holders, and other parties in interest in these cases.

13.    With respect to the preceding disclosures, only the following entities have accounted for more than 1% of KTB&S's gross revenues for the 12-month period preceding the date hereof: Ableco Finance LLC and its affiliates; Paramount Pictures and its affiliates. My role as examiner in the Tribune Company chapter 11 cases (and KTB&S's role as counsel to the examiner) also accounted for greater than 1% of KTB&S's gross revenues for the 12-month period preceding the date hereof.

14.    I do not believe that any such connections between KTB&S and the Identified Parties results in KTB&S holding or representing an interest that is adverse to the Debtors' estates.

15.    Many of KTB&S's attorneys are active in local and national bar and other professional associations, and in community organizations. As a result, KTB&S attorneys have developed relationships with judges and attorneys (including attorneys with the Offices of the United States Trustee) throughout the country. KTB&S is frequently co-counsel with or adverse to many of the attorneys who will be involved in these cases and does not believe that these relationships result in KTB&S holding or representing an interest adverse to the estates.

9

16.     Based on KTB&S's representation of other clients in unrelated matters, KTB&S would not be able to represent the Debtors in those unrelated matters to the extent such representation would be adverse to KTB&S's other client(s).

17.     KTB&S will file supplemental declarations regarding its retention if any additional relevant information comes to its attention or if supplemental disclosure is requested by this Court or the United States Trustee.

18.     To the best of my knowledge, neither KTB&S nor any attorney at the firm holds or represents an interest adverse to the estates.

19.     To the best of my knowledge, neither KTB&S nor any attorney at the firm is or was a creditor, an equity security holder, or an insider of the Debtors, except that KTB&S previously rendered legal services to the Debtors for which it was compensated.

20.     To the best of my knowledge, KTB&S does not have an interest materially adverse to the interests of the estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in the Debtors or an investment banker specified in the foregoing paragraphs, or for any other reason.

21.     In view of the foregoing, to the best of my knowledge, KTB&S is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as modified by Bankruptcy Code section 1107(b).

### PROFESSIONAL COMPENSATION

22.     As provided by the terms of the Engagement Agreement, and as described below, KTB&S is entitled to be paid for services rendered and expenses incurred.

23.     For professional services, KTB&S's fees are based on its hourly rates, which are periodically adjusted.  KTB&S's professional billing rates for 2010 are as follows:

Partners & Of-Counsel          $550-975

125399.1

| Associates | $375-490 |
| Paralegals | $250 |
| Law Clerks | $170 |

Hourly rates set forth above are subject to annual increases in the normal course of the Firm's business, often due to the increased experience of a particular professional.

24.    It is KTB&S's practice to charge its clients for expenses incurred in connection with their cases.  Expenses charged to clients include, among other things, charges for messenger services, air couriers, photocopying, court fees, travel expenses, postage for large mailings, long distance telephone, computerized legal research facilities, investigative searches, and other charges customarily invoiced by law firms in addition to fees for legal services.  Third party expenses incurred by KTB&S are charged at their actual cost to KTB&S without surcharge.  KTB&S does not charge its clients for word processing or secretarial overtime.

25.    As of November 1, 2009, KTB&S held a retainer (the "Retainer") in the amount of $204,336.80 for professional services rendered or to be rendered and expenses incurred or to be incurred by KTB&S on behalf of the Debtors, with the understanding that any amount remaining after payment of prepetition fees and expenses would be held by KTB&S as a retainer for post-petition fees and expenses.

26.    As of the Petition Date, based upon prepetition fees and expenses that have been identified and accounted for as of the date hereof, and assuming application of all such fees and expenses against the Retainer, KTB&S had approximately $172,491.30 remaining in the Retainer.  Those remaining funds will be applied by KTB&S to pay prepetition fees and costs that are subsequently identified and accounted for.  Any balance existing after all such applications will be treated as an "evergreen" retainer, to be available for the first payment of KTB&S's Court-approved postpetition fees and expenses (and thereafter to subsequent payments of KTB&S's Court-approved postpetition fees and expenses, if applicable).  In the event of a

11

deficiency in the Retainer after application to prepetition fees and expenses, KTB&S has agreed to waive any resulting prepetition claim against the Debtors.

27.    Since November 1, 2009, the total aggregate amount of fees earned and expenses incurred by KTB&S on behalf of the Debtors, as identified and accounted for by KTB&S as of the date hereof, was approximately $1,200,689.36.  Of that amount, $1,195,499.50 is attributable to prepetition fees and $5,189.86 is attributable to prepetition expenses.  During the same period, the Debtors paid KTB&S an aggregate amount of $1,168,843.86 in addition to the $204,336.80 held by KTB&S as the Retainer, for a total of $1,373,180.66.  The balance of $172,491.30 ($1,373,180.66 - $1,200,689.36) is the amount of the remaining, unapplied Retainer funds referred to above.  The Debtors understand that not all of KTB&S prepetition fees and expenses were identified and accounted for as of the Petition Date or as of the date hereof.  As such amounts are posted, the amount of prepetition fees and expenses will increase and the amount of the remaining Retainer funds will decrease.  Attached as Exhibit 1 hereto is a schedule of (i) invoices sent by KTB&S to the Debtors for services and expenses since November 1, 2009 and (ii) payments made by the Debtors to KTB&S in response to such invoices.

28.    KTB&S intends to apply to this Court for allowance of compensation for professional services rendered and reimbursement of charges and disbursements incurred in these chapter 11 cases in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the United States Trustee fee guidelines, and any orders entered in these cases governing professional compensation and reimbursement for services rendered and charges and disbursements incurred.  KTB&S will seek compensation for the services of each attorney and paraprofessional acting on behalf of the Debtors in these cases at the then hourly rate charged for such services as described herein and in the Application.

125399.1

29.    KTB&S has agreed to accept as compensation such sums as may be allowed by this Court on the basis of the professional time spent, the rates charged for such services, the necessity of such services to the administration of the estates, the reasonableness of the time within which the services were performed in relation to the results achieved, and the complexity, importance and nature of the problems, issues, or tasks addressed in these cases.

30.    Other than as set forth above, no arrangement is proposed between the Debtors and KTB&S for compensation to be paid in these cases.

31.    Except for such sharing arrangements among KTB&S, and its respective partners, KTB&S has no agreement with any other entity to share any compensation received, nor will any be made, except as permitted under section 504(b)(1) of the Bankruptcy Code.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 4th day of November, 2010 at Los Angeles, California.

KLEE, TUCHIN, BOGDANOFF & STERN LLP


*/s/ Kenneth N. Klee*
Kenneth N. Klee
1999 Avenue of the Stars, 39th Floor
Los Angeles, CA 90067
Telephone: (310) 407-4000
Facsimile: (310) 407-9090
kklee@ktbslaw.com

13

# EXHIBIT 1

**Payment Schedule**

Exhibit 1 to Klee Declaration -
Schedule Of KTB&S Invoices And Payments
From November 1, 2009 to Petition Date

| Date | Description | Fees | Expenses | Total | Payments | KTB&S On-Account Cash |
|---|---|---|---|---|---|---|
| 11/1/2009 | | | | | | $204,336.80[1] |
| 11/3/2009 | Invoice No. 9438 | $50,971.00 | $40.64 | $51,011.64 | | $153,325.16 |
| 11/30/2009 | Payment From MGM | | | | $51,011.64 | $204,336.80 |
| 11/30/2009 | Payment From MGM | | | | $150.00 | $204,486.80 |
| 12/3/2009 | Invoice No. 9488 | $37,262.50 | $104.57 | $37,367.07 | | $167,119.73 |
| 12/3/2009 | Invoice No. 9489 | $150.00 | $0.00 | $150.00 | | $166,969.73 |
| 12/15/2009 | Payment From MGM | | | | $37,367.07 | $204,336.80 |
| 12/15/2009 | Payment From MGM | | | | $150.00 | $204,486.80 |
| 1/6/2010 | Invoice No. 9558 | $47,702.50 | $704.06 | $48,406.56 | | $156,080.24 |
| 2/2/2010 | Invoice No. 9600 | $72,273.50 | $355.04 | $72,628.54 | | $83,451.70 |
| 2/3/2010 | Payment From MGM | | | | $48,406.56 | $131,858.26 |
| 3/3/2010 | Invoice No. 9671 | $54,847.50 | $263.18 | $55,110.68 | | $76,747.58 |
| 3/10/2010 | Payment From MGM | | | | $72,628.54 | $149,376.12 |
| 3/29/2010 | Payment From MGM | | | | $55,110.68 | $204,486.80 |
| 4/5/2010 | Invoice No. 9710 | $40,102.00 | $34.68 | $40,136.68 | | $164,350.12 |
| 4/15/2010 | Payment From MGM | | | | $40,136.68 | $204,486.80 |
| 5/5/2010 | Invoice No. 9773 | $31,414.50 | $49.30 | $31,463.80 | | $173,023.00 |
| 6/2/2010 | Payment From MGM | | | | $31,463.80 | $204,486.80 |
| 6/2/2010 | Invoice No. 9854 | $32,725.00 | $3.59 | $32,728.59 | | $171,758.21 |
| 6/14/2010 | Payment From MGM | | | | $32,728.59 | $204,486.80 |
| 7/2/2010 | Invoice No. 9903 | $21,230.50 | $64.69 | $21,295.19 | | $183,191.61 |
| 7/20/2010 | Payment From MGM | | | | $21,295.19 | $204,486.80 |
| 8/4/2010 | Invoice No. 9971 | $20,585.00 | $14.20 | $20,599.20 | | $183,887.60 |
| 8/16/2010 | Payment From MGM | | | | $20,599.20 | $204,486.80 |
| 9/2/2010 | Invoice No. 10030 | $89,583.00 | $0.00 | $89,583.00 | | $114,903.80 |
| 9/17/2010 | Payment From MGM | | | | $89,583.00 | $204,486.80 |
| 9/17/2010 | Payment from MGM | | | | $100,000.00 | $304,486.80 |
| 9/27/2010 | Invoice No. 10088 | $121,033.00 | $1,175.48 | $122,208.48 | | $182,278.32 |

[1]       Represents cash held by KTB&S on account as of November 1, 2009.

125423.1

| | | | | | |
|---|---|---|---|---|---|
| 9/28/2010 | Payment From MGM | | | | $122,208.48 | $304,486.80 |
| 10/5/2010 | Invoice No. 10108 | $131,159.50 | $301.60 | $131,461.10 | | $173,025.70 |
| 10/6/2010 | Payment From MGM | | | | $131,461.10 | $304,486.80 |
| 10/18/2010 | Invoice No. 10150 | $174,846.50 | $1,848.83 | $176,695.33 | | $127,791.47 |
| 10/20/2010 | Payment From MGM | | | | $176,695.33 | $304,486.80 |
| 10/27/2010 | Invoice No. 10151 | $137,618.00 | $230.00 | $137,848.00 | | $166,638.80 |
| 10/28/2010 | Payment from MGM | | | | $137,848.00 | $304,486.80 |
| 10/29/2010 | Invoice No. 10152 | $100,000.00 | $0.00 | $100,000.00 | | $204,486.80 |
| 11/3/2010 | Invoice No. 10152 | $31,995.50 | $0.00 | $31,995.50 | | $172,491.30 |
| | **Total** | $1,195,499.50 | $5,189.86 | $1,200,689.36 | $1,168,843.86 | **$172,491.30**[2] |

---

[2]    Amount represents KTB&S's estimated Retainer balance as of the Petition Date, calculated as follows: (i) $204,336.80 (November 1, 2009 cash held by KTB&S on account) + (ii) $1,168,843.46 (payments from the Debtors to KTB&S from November 1, 2009 to Petition Date) - (iii) $1,200,689.36 (KTB&S's fees and expenses from November 1, 2009 to Petition Date).

## EXHIBIT 2

**KTB&S Engagement Letter**



**Klee,
Tuchin,
Bogdanoff &
Stern
LLP**

| | |
|---|---|
| 1999 Avenue of the Stars | voice: 310-407-4000 |
| Thirty-Ninth Floor | fax: 310-407-9090 |
| Los Angeles, California 90067 | www.ktbslaw.com |

E-mail: mtuchin@ktbslaw.com
Direct Dial: 310-407-4040

August 24, 2010

Scott S. Packman, Esq.
Senior Vice President and Deputy General Counsel
Metro-Goldwyn-Mayer Studios, Inc.
10250 Constellation Blvd.
Los Angeles, CA 90067

Re:    **Retainer Agreement between Klee, Tuchin, Bogdanoff & Stern
LLP and Metro-Goldwyn-Mayer Studios, Inc., et al.**

Dear Scott:

I am writing this letter to set forth the terms and conditions upon which Klee, Tuchin, Bogdanoff & Stern LLP ("KTB&S") will represent Metro-Goldwyn-Mayer Studios Inc. and its affiliates that determine to commence chapter 11 cases (each, a "CLIENT" and together, "CLIENTS").

Scope of representation.

KTB&S specializes in the areas of reorganization, bankruptcy, general commercial litigation, general corporate law, financings and acquisitions. We limit our practice, and thus our services to CLIENTS, to those areas.

As set forth herein, KTB&S will act as CLIENTS' counsel to render such ordinary and necessary legal services as may be required in connection with cases under chapter 11 of the Bankruptcy Code for CLIENTS, including:

a.    providing legal advice with respect to the Debtors' powers and duties as debtors in possession in the continued operation of their businesses and management of their properties;

b.    preparing on behalf of the Debtors necessary applications, motions, answers, orders, reports, and other legal papers;

124551.1

Scott S. Packman, Esq.
August 24, 2010
Page 2

c.    appearing in Court on behalf of the Debtors and in order to protect
the interests of the Debtors before the Court;

d.    preparing and pursuing confirmation of a plan(s) and approval of a
disclosure statement(s) and/or a sale(s) of the Debtors' assets
pursuant to section 363 of the Bankruptcy Code; and

e.    performing other legal services for the Debtors that may be
necessary and proper in the chapter 11 proceedings.

KTB&S will consult only as to those aspects of the matter that are within the
scope of its representation to which CLIENTS request that it devote attention.

Financial arrangements.

CLIENTS agree to deposit with KTB&S $300,000 as a retainer ("Retainer") for
the professional services that KTB&S will render and expenses that KTB&S will incur.

KTB&S periodically will send to CLIENTS an invoice for the hourly charges and
out-of-pocket disbursements incurred during the preceding period. Unless the level of
our work increases above current expectations, our invoices will be transmitted once or
twice per month. CLIENTS shall advise KTB&S of any difference they may have with
any invoice within 15 calendar days after the date of the invoice. CLIENTS further
agree, within 15 calendar days following its receipt of KTB&S's invoice, to pay the
undisputed portion of the invoice. If CLIENTS do not remit the undisputed amount
within 15 calendar days of the date of the invoice, payment of the invoice, excluding any
disputed amounts, may be made by the transfer of funds from the Retainer to KTB&S's
general account. The application of the retainer does not alter CLIENTS' obligation to
pay the invoice as set forth above within 15 calendar days after the date of the invoice
(thereby replenishing the retainer to its original level). KTB&S and CLIENTS will
attempt in good faith to resolve any dispute regarding an invoice.

KTB&S's invoices will reflect charges for services rendered calculated on the
basis of KTB&S's hourly rates in effect at the time of such services. For attorney
services these rates presently range from $375 to $975 per hour. KTB&S's hourly rates
are adjusted periodically, typically on January 1 of each year, to reflect the advancing
experience, capabilities, and seniority of KTB&S's professionals as well as general
economic factors.

KTB&S's invoices also will include reasonable and customary charges for costs
and expenses. Such costs and expenses will include, among others, charges for
messenger services, air couriers, photocopying, court fees, travel expenses, postage for
large mailings, long distance telephone, computerized legal research facilities,
investigative searches, and other charges customarily invoiced by law firms in addition
to fees for legal services. (In the event extraordinary or significant expenses are

Scott S. Packman, Esq.
August 24, 2010
Page 3

incurred, such as transcript costs or costs for duplication of files should CLIENTS request originals or copies thereof during or at the conclusion of KTB&S's representation, CLIENTS have agreed that CLIENTS will pay those expenses directly or will promptly reimburse KTB&S separately from its normal invoice procedure.) KTB&S does not charge for secretarial overtime or word processing.

Immediately prior to the filing of the chapter 11 petitions, KTB&S will draw down on the Retainer to pay any outstanding invoices and any estimated fees and expenses through the petition date. Following commencement of chapter 11 cases, CLIENTS acknowledge and agree that KTB&S will be compensated consistent with any orders of the Bankruptcy Court and applicable procedures established by the Office of the United States Trustee. CLIENTS consent to KTB&S drawing down on the Retainer postpetition to cover postpetition fees and expenses.

CLIENTS agree that it will be difficult to separate the services for each CLIENT and accordingly agree that KTB&S will not be required to separately bill each CLIENT for services, and that each CLIENT is financially responsible for the entire bill.

<u>Disclosures and Waivers.</u>

While confidential communications between a client and counsel are privileged, CLIENTS should be aware that the filing of a bankruptcy case may severely impact upon this attorney-client privilege. Specifically, if a trustee is appointed in any bankruptcy case concerning a corporate debtor, the trustee will be able to compel disclosure by any counsel to the corporate debtor of information communicated by the corporation to counsel and vice versa.

KTB&S is a specialty law firm with few continuing institutional clients. Because of the specialized nature of its practice, from time to time KTB&S may concurrently represent one client in a particular case and the debtor, creditor, competitor or adversary of that client (or a professional employed to represent that opposing party) in an unrelated matter. Thus, by way of illustration only, while representing CLIENTS, KTB&S may represent a debtor of CLIENTS as a debtor in a bankruptcy case or in connection with out-of-court negotiations with such entity's creditors concerning that entity's ability to pay its debts generally. Please be assured that, despite any concurrent representation, KTB&S strictly preserves all client confidences and zealously pursues the interests of each of its clients, including in those circumstances in which KTB&S represents the adversary of an existing client in an unrelated case. CLIENTS agree that they do not consider such concurrent representation, in completely unrelated matters, of CLIENTS and any adversary to be inappropriate and therefore waive any objections to any such present or future concurrent representation.

KTB&S conducted a "conflict check" to determine its relationships, if any, to parties that may have a connection to CLIENTS. This "conflict check" revealed that KTB&S represents, or formerly represented, the entities or individuals listed in the

Scott S. Packman, Esq.
August 24, 2010
Page 4

following paragraphs, or entities or individuals that are affiliates of the entities listed in
the following paragraphs:

(a)  KTB&S has represented in the past and currently represents Viacom,
Paramount Pictures, and their affiliates in unrelated matters. Under no circumstances
will KTB&S represent Viacom, Paramount Pictures or their affiliates in connection with
CLIENTS' chapter 11 cases. Moreover, KTB&S has a waiver that would permit it to be
adverse to Viacom, Paramount Pictures and their affiliates with respect to CLIENTS'
chapter 11 cases.

(b)  KTB&S currently represents Angelo Gordon in unrelated matters. Under no
circumstances will KTB&S represent Angelo Gordon in connection with CLIENTS'
chapter 11 cases. Moreover, KTB&S has a waiver that would permit it to be adverse to
Angelo Gordon with respect to CLIENTS' chapter 11 cases.

(c)  KTB&S currently represents Cerberus Capital Management L.P., Ableco
Finance, LLC and their affiliates in connection with unrelated matters. Under no
circumstances will KTB&S represent Cerberus Capital Management L.P., Ableco
Finance, LLC or their affiliates in connection with CLIENTS' chapter 11 cases.
Moreover, KTB&S has a waiver that would permit KTB&S to be adverse to Cerberus
Capital Management L.P., Ableco Finance LLC and their affiliates with respect to
CLIENTS' chapter 11 cases.

(d)  KTB&S currently represents The TCW Group, which may be affiliated with
TCW Asset Management Co., in an unrelated matter. Under no circumstances will
KTB&S represent The TCW Group in connection with CLIENTS' chapter 11 cases.
Moreover, KTB&S has a waiver that would permit it to be adverse to The TCW Group
with respect to CLIENTS' chapter 11 cases.

(e)  A member of KTB&S, Kenneth N. Klee recently served as the examiner, and
KTB&S represented him in that capacity, in the chapter 11 case of the Tribune
Company (*In re Tribune Company, et al.*, Case No. 08-13141, Bankr. D. Del.). One or
more of CLIENTS hold claims against the Tribune Company and/or its affiliated chapter
11 debtors. KTB&S does not represent the Tribune Company or any of its affiliated
chapter 11 debtors.

(f)  KTB&S previously represented Twentieth Century Fox (over a decade ago).
KTB&S does not currently represent Twentieth Century Fox and under no
circumstances will KTB&S represent Twentieth Century Fox in connection with
CLIENTS' chapter 11 cases. KTB&S is free to be adverse to Twentieth Century Fox
with respect to CLIENTS' chapter 11 cases.

(g)  KTB&S previously represented LionsGate in unrelated matters. KTB&S
does not currently represent LionsGate and under no circumstances will KTB&S

Scott S. Packman, Esq.
August 24, 2010
Page 5

represent LionsGate in connection with CLIENTS' chapter 11 cases. KTB&S is free to
be adverse to LionsGate with respect to CLIENTS' chapter 11 cases.

(h) KTB&S previously represented Levine Leichtman Capital Partners in
unrelated matters. KTB&S does not currently represent Levine Leichtman Capital
Partners and under no circumstances will KTB&S represent Levine Leichtman Capital
Partners in connection with CLIENTS' chapter 11 cases. KTB&S is free to be adverse
to Levine Leichtman Capital Partners with respect to CLIENTS' chapter 11 cases.

(i) KTB&S previously represented Summit Entertainment, LLC in unrelated
matters. KTB&S does not currently represent Summit Entertainment, LLC and under no
circumstances will KTB&S represent Summit Entertainment, LLC in connection with
CLIENTS' chapter 11 cases. KTB&S is free to be adverse to Summit Entertainment,
LLC with respect to CLIENTS' chapter 11 cases.

(j) KTB&S previously represented Morgan Stanley in unrelated matters. KTB&S
does not currently represent Morgan Stanley and under no circumstances will KTB&S
represent Morgan Stanley in connection with CLIENTS' chapter 11 cases. KTB&S is
free to be adverse to Morgan Stanley with respect to CLIENTS' chapter 11 cases.

(k) KTB&S previously represented HSBC Bank USA, which may be affiliated
with HSBC Holdings PLC, in unrelated matters. KTB&S does not currently represent
HSBC Bank USA and under no circumstances will KTB&S represent HSBC Bank USA
in connection with CLIENTS' chapter 11 cases. KTB&S is free to be adverse to HSBC
Bank USA with respect to CLIENTS' chapter 11 cases.

(l) KTB&S previously represented Bank of New York in unrelated matters.
KTB&S does not currently represent Bank of New York and under no circumstances will
KTB&S represent Bank of New York in connection with CLIENTS' chapter 11 cases.
KTB&S is free to be adverse to Bank of New York with respect to CLIENTS' chapter 11
cases.

(m) KTB&S previously represented an individual that does not appear on the list
of Identified Parties, on behalf of Federal Insurance Company, in unrelated matters.
KTB&S does not currently represent this individual or Federal Insurance Company and
under no circumstances will KTB&S represent the individual or Federal Insurance
Company in connection with CLIENTS' chapter 11 cases. KTB&S is free to be adverse
to these parties with respect to CLIENTS' chapter 11 cases.

(n) KTB&S previously represented Gibson, Dunn & Crutcher, LLP in unrelated
matters. KTB&S does not currently represent Gibson, Dunn & Crutcher, LLP and under
no circumstances will KTB&S represent Gibson, Dunn & Crutcher, LLP in connection
with CLIENTS' chapter 11 cases. KTB&S is free to be adverse to Gibson, Dunn &
Crutcher, LLP with respect to CLIENTS' chapter 11 cases.

Scott S. Packman, Esq.
August 24, 2010
Page 6


(o)    KTB&S previously represented Houlihan Lokey Howard & Zukin in unrelated matters.   KTB&S does not currently represent Houlihan Lokey Howard & Zukin and under no circumstances will KTB&S represent Houlihan Lokey Howard & Zukin in connection with CLIENTS' chapter 11 cases.  KTB&S is free to be adverse to Houlihan Lokey Howard & Zukin with respect to CLIENTS' chapter 11 cases.

(p)    A member of KTB&S, Daniel J. Bussel, previously served as an expert witness in unrelated litigation on behalf of Nomura Asset Capital Corp. and Nomura Asset Securitization Corp.  KTB&S does not currently represent Nomura Asset Capital Corp. and Nomura Asset Securitization Corp. and under no circumstances will KTB&S represent Nomura Asset Capital Corp. and Nomura Asset Securitization Corp. in connection with CLIENTS' chapter 11 cases.  KTB&S is free to be adverse to Nomura Asset Capital Corp. and Nomura Asset Securitization Corp. with respect to CLIENTS' chapter 11 cases.

(q)    Daniel J. Bussel and Kenneth N. Klee previously served as expert witnesses in unrelated litigation on behalf of Lloyd's of London.  KTB&S does not currently represent Lloyd's of London and under no circumstances will KTB&S represent Lloyd's of London in connection with CLIENTS' chapter 11 cases.  KTB&S is free to be adverse to Lloyd's of London with respect to CLIENTS' chapter 11 cases.

(r)    In connection with KTB&S's prior representation of an ad hoc committee of second lien lenders in an unrelated matter, KTB&S was directly engaged by American Capital and Blackrock.   KTB&S does not currently represent American Capital or Blackrock and under no circumstances will KTB&S represent American Capital or Blackrock in connection with CLIENTS' chapter 11 cases.  KTB&S is free to be adverse to American Capital and Blackrock with respect to CLIENTS' chapter 11 cases.

(s)    In connection with KTB&S's prior representation of the agent and lenders under an unrelated credit facility, KTB&S was directly engaged by the following lenders: (i) Babson CLO Ltd. 2003-I, Babson CLOT Ltd. 2005-I, Babson Ltd. 2005-III for which Babson Capital Management LLC served as Collateral Manager; (ii) Golub Capital Master Funding LLC; (iii) Golub Capital Loan Trust 2005-I and Golub Capital Partners Funding 2007-I Ltd. for which Golub Capital Incorporated served as Servicer; (iv) Golub International Loan Ltd. I for which Golub Capital International Management LLC served as Collateral Manager; (v) Bridgeport CLO Ltd., Cumberland II CLO Ltd., Forest Creek CLO Ltd., Long Grove CLO Ltd., Market Square CLO Ltd., Marquette Park CLO Ltd., and Rosemont CLO Ltd., for which Deerfield Capital Management LLC served as Collateral Manager; and (vi) Callidus Debt Partners CLO Fund III, Ltd., Callidus Debt Partners CLO Fund IV, Ltd., Maps CLO Fund I, LLC, and Maps CLO Fund II, LLC, for which Callidus Capital Management, LLC served as Collateral Manager.  KTB&S does not currently represent any of these entities and under no circumstances will KTB&S represent any of them in connection with CLIENTS' chapter 11 cases.  KTB&S is free to be adverse to all of these entities with respect to CLIENTS' chapter 11 cases.

Scott S. Packman, Esq.
August 24, 2010
Page 7

(t) Over the years, KTB&S has represented and currently represents both formal and ad hoc groups of creditors in unrelated matters; it is possible that some of these creditors or other parties in such matters may have connections to CLIENTS. Likewise, KTB&S has represented and currently represents agent-lenders and non-agent lenders, in lending facilities; it is possible that some of these lenders or other parties in such matters may have connections to CLIENTS. KTB&S will not represent any such party with respect to CLIENTS' chapter 11 cases.

CLIENTS agree that they do not consider our representation of CLIENTS to be inappropriate in light of any of the relationships described above.

Some attorneys at KTB&S have relatives or significant others who are attorneys at other law firms. Please advise in writing if you wish to review a list of such firms. We have strict policies against disclosing confidential information to anyone outside of the firm, including spouses, parents, children, siblings, fiancés, and fiancées.

KTB&S maintains errors and omissions insurance coverage applicable to the services to be rendered hereunder which complies with the requirements imposed by California Business and Professions Code sections 6147(a)(6) and 6148(a)(4).

Opinion Letters and Tax Matters.

To the extent KTB&S is requested to provide an opinion letter, we do so only as approved by a special committee of the firm. Because of the areas in which we practice, opinion letters rarely are furnished.

We do not give tax advice. If, notwithstanding the preceding, any advice we furnish to CLIENTS is deemed to constitute tax advice within the meaning of U.S. Treasury Regulations, then as required by U.S. Treasury Regulations governing tax practice, CLIENTS are hereby advised that any tax advice will not be written or intended to be used (and cannot be used) by any taxpayer for the purpose of (i) avoiding any penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction(s) or tax-related matter(s).

No Individual/Officer/Family Etc. Representation.

KTB&S is being engaged by CLIENTS only. KTB&S's employment by CLIENTS does not include the representation of any individual officer, member, director, shareholder, or employee; KTB&S encourages each to consult independent counsel.

Discharge and Withdrawal.

Any or all CLIENTS may discharge KTB&S at any time. KTB&S may withdraw at any time with CLIENTS' consent or for good cause without CLIENTS' consent. Good cause includes CLIENTS' breach of this agreement (including, without limitation CLIENTS' failure to pay any statement when due or to replenish the Retainer in

Scott S. Packman, Esq.
August 24, 2010
Page 8

accordance with this agreement), CLIENTS' refusal or failure to cooperate with KTB&S, or any fact or circumstance that would render KTB&S's continuing representation unlawful or unethical.

### Client Files.

After the termination of KTB&S's engagement, KTB&S will retain CLIENTS' files in KTB&S's possession for a period of three years following such termination. If CLIENTS do not request in writing the CLIENTS' files before the end of that three-year period, upon the expiration of such period KTB&S will have no further obligation to retain the files and may, in KTB&S's discretion, destroy them without further notice to CLIENTS.

### No Other Agreement.

This constitutes the entire understanding between CLIENTS and KTB&S regarding KTB&S's employment. By executing this agreement CLIENTS acknowledge that they have read carefully and understand all of its terms. The agreement cannot be modified except by further written agreement signed by each party.

### Conclusion.

If CLIENTS have any questions about the foregoing, please call me. Moreover, CLIENTS are encouraged to obtain independent legal advice regarding this agreement. If CLIENTS are in agreement with the foregoing, and it accurately represents CLIENTS' agreement with KTB&S, please execute the enclosed copy of this letter.

Very truly yours,

KLEE, TUCHIN, BOGDANOFF & STERN LLP

By:  Michael L. Tuchin

**THE FOREGOING IS APPROVED AND AGREED TO:**

Dated:  10/5/10

Metro-Goldwyn-Mayer Studios, Inc.

By: _____

Its: _____EXECUTIVE VICE PRESIDENT_____
& GENERAL COUNSEL

MGM Retainer Agreement.doc