SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
Jay M. Goffman
Four Times Square
New York, New York 10036
(212) 735-3000

Nick P. Saggese
Rick C. Madden
Glenn S. Walter
300 South Grand Avenue
Suite 3400
Los Angeles, California 90071
(213) 687-5000

and

KLEE, TUCHIN, BOGDANOFF & STERN LLP
Kenneth N. Klee
Michael L. Tuchin
1999 Avenue of the Stars
Thirty-Ninth Floor
Los Angeles, California 90067
(310) 407-4000

Proposed Counsel for Debtors and
 Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                  :
In re:                                                            : Chapter 11
                                                                  :
METRO-GOLDWYN-MAYER STUDIOS INC.,                                 : Case No. 10-15774 (SMB)
et al.,                                                           :
                                                                  :
                    Debtors.                                      : (Jointly Administered)
                                                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEBTORS' MOTION FOR ORDER APPROVING THE SERVICES AGREEMENT
WITH CAIR MANAGEMENT, LLC, STEPHEN F. COOPER, AND ZOLFO COOPER
MANAGEMENT, LLC, AND AUTHORIZING THE DEBTORS TO PERFORM
THEREUNDER <u>NUNC</u> <u>PRO</u> <u>TUNC</u> TO THE PETITION DATE**

Metro-Goldwyn-Mayer Studios Inc. ("<u>MGM Studios</u>") and certain of its affiliates, the debtors and debtors in possession in the above-captioned cases (collectively, including MGM Studios, the "<u>Debtors</u>"),[1] hereby move (the "<u>Motion</u>") the Court for entry of an order under section 363 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") approving a standard services agreement (as amended, the "<u>Agreement</u>"), a copy of which is attached hereto as <u>Exhibit C</u>, by and between certain Debtors, CAIR Management, LLC ("<u>CAIR</u>"), Stephen F. Cooper ("<u>Mr. Cooper</u>"), and Zolfo Cooper Management, LLC ("<u>Zolfo Cooper</u>"), and authorizing the Debtors to perform thereunder, in each case <u>nunc</u> <u>pro</u> <u>tunc</u> to the Petition Date (defined below). In support of the Motion, the Debtors rely upon and incorporate by reference the Declaration of Stephen F. Cooper, a member of the Office of the Chief Executive Officer of MGM Holdings Inc. (the "<u>Office of the CEO</u>"), and the Declaration of Steve Hendry, Senior Executive Vice President, Finance of MGM Holdings Inc. (together, the "<u>First-Day Declaration</u>") and the declarations of Bret Fernandes and Stephen F. Cooper appended to this Motion as <u>Exhibits D and E</u> (the "<u>Declarations</u>"). In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these

---

[1] The names of the Debtors in these jointly administered cases are identified on <u>Exhibit A</u> hereto.

cases and this Application in this District is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief requested herein is section 363 of the Bankruptcy Code.

**BACKGROUND**

2.  The Debtors are engaged primarily in the development, production, and worldwide distribution of feature films, television programming, interactive media, music, and licensed merchandise. The Debtors' film and television library (the "MGM Library") contains approximately 4,100 theatrically released feature film titles and approximately 10,800 television episodes, and is one of the largest collections of post-1948 feature films in the world. Films in the MGM Library have won over 200 Academy Awards, including fifteen Best Picture Awards. The MGM Library also contains rights to many iconic film and television franchises, including twenty-four titles in the *James Bond* film franchise, six titles in the *Rocky* film franchise, and with respect to the *Stargate* franchise, one film, two direct-to-video titles and several television series, including *Stargate SG-1*, the longest running science fiction series in U.S. television history.

3.  On November 3, 2010 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code. The factual background regarding the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of these chapter 11 cases, is set forth in detail in the First-Day Declaration.

4.  The Debtors continue to operate their businesses and manage their properties as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases. As of the date hereof, no creditors' committee has been appointed.

5. On the Petition Date, the Debtors filed with the Court, among other things, (i) a joint prepackaged plan of reorganization (the "<u>Plan</u>") and (ii) a disclosure statement related thereto. The Plan provides for the payment in full of all allowed general unsecured claims against the Debtors.

**RELIEF REQUESTED**

6. By this Motion, the Debtors seek entry of an order under section 363 of the Bankruptcy Code approving the Agreement, a copy of which is attached hereto as <u>Exhibit C</u>,[2] and authorizing the Debtors to continue performing thereunder, in each case <u>nunc</u> <u>pro</u> <u>tunc</u> to the Petition Date. Pursuant to the Agreement, the Debtors have procured the services, through CAIR and Zolfo Cooper, of (a) Mr. Cooper, the Managing Member of CAIR, as a Vice Chairman (which position is not a position on the Debtors' boards of directors) and a member of the Office of the CEO, (b) Adam Murphy ("<u>Mr. Murphy</u>"), who is a subcontractor to CAIR, as an Associate Director of Restructuring, and (c) Bret Fernandes ("<u>Mr. Fernandes</u>" and, collectively with Mr. Murphy, the "<u>Associate Directors</u>"), a Senior Director at Zolfo Cooper, as an Associate Director of Restructuring. The Associate Directors are not officers of the Debtors.

**QUALIFICATIONS**

7. The Debtors seek, among other things, to continue the retention of CAIR and Zolfo Cooper and use of services of Mr. Cooper as a Vice Chairman (as noted above, this position is not a position on the Debtors' boards of directors) and as a member of the Office of the CEO and Messrs. Murphy and Fernandes as Associate Directors. Under the terms of the

---

[2] The summaries contained in this Motion are qualified in their entirety by reference to the provisions of the Agreement. To the extent there is any discrepancy between the terms contained in this Motion and those set forth in the Agreement, the terms of the Agreement shall control. Unless otherwise defined, capitalized terms used in this Motion shall have the meanings ascribed to them in the Agreement.

4

Agreement, Mr. Cooper is responsible for the overall design of CAIR's and Zolfo Cooper's engagement and directing the engagement team.

8. CAIR is an entity owned and controlled by Mr. Cooper through which he provides, <u>inter alia</u>, restructuring and advisory services. Mr. Cooper has over 30 years of experience, primarily in dealing with troubled companies, and has served as interim management in numerous engagements, including Enron, Krispy Kreme Doughnuts, Blue Bird Corporation, Hawaiian Telcom Communications, and American Home Mortgage. He has gained significant experience in production, marketing, and sales, as well as accounting and finance, across a broad industry base. Mr. Cooper has a national reputation as an effective problem solver who is capable of forging consensual coalitions among parties with disparate economic interests. He graduated from Occidental College and later earned an MBA from the Wharton School of the University of Pennsylvania.

9. Mr. Cooper will be assisted by Mr. Murphy and Mr. Fernandes, who will serve as Associate Directors of the Debtors. Mr. Murphy has more than 15 years of experience providing capital and advisory services for companies going through financial, operational, and strategic transitions. Mr. Murphy graduated from the University of Denver and earned a MBA from the University of Michigan. Mr. Fernandes has more than 15 years of finance and operations experience. Mr. Fernandes is currently serving as Director of Restructuring at American Home Mortgage, and previously served as an Associate Director for Enron and Collins & Aikman.

10. Zolfo Cooper is one of the world's leading financial advisory, interim management, and litigation support firms, with a team of restructuring and litigation consulting specialists. Zolfo Cooper specializes in advising debtors, creditors, investors, and court-

5

appointed officials in formal bankruptcy proceedings and out-of-court workouts. Zolfo Cooper has a reputation for quality, breadth of experience, and a proven track record for success earned by serving clients in numerous nationally prominent bankruptcy proceedings. CAIR's, Mr. Cooper's, and Zolfo Cooper's qualifications, including descriptions of their staffing and approaches in providing services, are more fully set forth in the appended Declarations and the statements of qualifications annexed thereto. Accordingly, the Debtors believe that CAIR, Mr. Cooper, and Zolfo Cooper are well qualified to perform the services described below.

## SERVICES TO BE PROVIDED

11. Under the Agreement, since August 12, 2009, the Debtors have retained CAIR and Zolfo Cooper and used the services of Mr. Cooper as a Vice Chairman (which position is not a position on the Debtors' boards of directors) and as a member of the Office of the CEO, and Messrs. Murphy and Fernandes as Associate Directors. By this Motion, the Debtors seek approval of the Agreement and authorization to continue such retention, in each instance effective <u>nunc</u> <u>pro</u> <u>tunc</u> to the Petition Date. Under the Agreement, Mr. Cooper is authorized to make decisions with respect to the Debtors' restructuring efforts and within the framework of the Debtor's existing contractual obligations and management structure and has the rights, duties, and responsibilities of a CEO, under the supervision of the Debtors' boards of directors in such a manner as they deem necessary or appropriate in their sole discretion, and in a manner consistent with the business judgment rule, the provisions of local law, and the Bankruptcy Code applicable to the obligations of persons acting on behalf of corporations. The services provided under the Agreement are vital to the success of these chapter 11 cases, and the Debtors require knowledgeable management to render such services.

# TERMS OF COMPENSATION

12. CAIR's, Mr. Cooper's, and Zolfo Cooper's compensation shall consist of the following:

(a) <u>Monthly Fee</u> – CAIR's, Mr. Cooper's, Zolfo Cooper's and the Associate Directors' fees for services will be $375,000 per month (the "<u>Monthly Fee</u>").  Of the Monthly Fee, Zolfo Cooper shall receive $112,500 and CAIR shall receive $262,500, and Mr. Murphy shall receive $75,000 from CAIR's share of the Monthly Fee.  The Monthly Fee shall be invoiced monthly and shall accrue effective on the first day of the month following the filing of the chapter 11 petition and continue through the closing of a Sale Transaction (as defined below) and/or confirmation of a plan of reorganization (the "<u>Accrual Period</u>").  Upon closing of a Sale Transaction and/or confirmation of a plan of reorganization, MGM has agreed to pay the Monthly Fees incurred during the Accrual Period.

(b) <u>Expenses</u> – Reimbursement of reasonable and documented out-of-pocket expenses including, but not limited to, costs of reproduction, any applicable state sales or excise taxes, and other reasonable and documented direct expenses, subject to any limitations set forth in the Declarations.  The Debtors may voluntarily pay the expense of CAIR's, Mr. Cooper's, and Zolfo Cooper's legal counsel, but shall not be obligated to do so.

(c) <u>Success Fee</u> –   The Debtors have agreed to pay to CAIR a success fee payable in cash, (i) upon the closing of a Sale Transaction (defined below) either in court, in the form of a prepackaged, prearranged, or similar prenegotiated transaction, or out of court, and/or (ii) if a Restructuring (defined below) in the form of a prepackaged, prearranged, or similar prenegotiated plan of reorganization is confirmed, where substantially all of the Debtors' existing debt or capital structure is amended, restructured, or reconfigured on terms acceptable to the Debtors (e.g., interest rate, amortization, dilution of existing equity holders, issuance of new equity, exchange of old indebtedness for new indebtedness, etc.).  The term "<u>Restructuring</u>" means any long-term recapitalization or restructuring (including, without limitation, through any exchange, conversion, cancellation, forgiveness, retirement, and/or a material modification or amendment to the terms, conditions, or covenants thereof) of the Debtors' preferred equity and debt securities and other indebtedness and obligations (including lease obligations, trade credit facilities and/or tort obligations), including pursuant to a repurchase or an exchange transaction, a plan, or solicitation of consents, waivers, acceptances, or authorizations.  The term "<u>Sale Transaction</u>" means the disposition to one or more third parties in one or a series of related transactions or going concern transaction of (i) all or substantially all of the equity securities of the Debtors by the security holders of the Debtors or (ii) all or substantially all of

the assets (including the assignment of any executory contracts) or businesses of the Debtors or their subsidiaries, in either case, including through a sale or exchange of capital stock, options, or assets, a lease of assets with or without a purchase option, a merger consolidation, or other business combination, an exchange or tender offer, a recapitalization, the formation of a joint venture, partnership, or similar entity, or any similar transaction. The success fee (the "Success Fee") for a Restructuring and/or Sale Transaction shall be equal to Four Million Dollars ($4,000,000.00) and shall be payable only once. CAIR understands that allowance and payment of any success fee will be subject to a fee application on notice to such parties as are required. The Success Fee will be in addition to, and not in lieu of, all professional fees charged to the Debtors in connection with the Agreement.

13. The Debtors shall pay to CAIR, Mr. Cooper, and Zolfo Cooper the compensation set forth above based upon the submission of monthly invoices by Zolfo Cooper. On behalf of CAIR, Mr. Cooper, and itself, Zolfo Cooper shall file with the Court, and provide notice to the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee") and any official committee appointed in these cases of, reports of compensation earned and expenses incurred on a monthly basis. Such reports shall describe generally the services provided, identify the compensation earned by each executive officer and staff employee provided, and itemize the expenses incurred. For the avoidance of doubt, it is contemplated that detailed time records need not be included in such reports. All compensation shall be subject to review by the Court in the event an objection is filed. The compensation provided for in the Agreement shall constitute full payment for the services to be rendered by CAIR, Mr. Cooper, and Zolfo Cooper to the Debtors.

14. Because CAIR, Mr. Cooper, and Zolfo Cooper are not being employed as professionals under section 327 of the Bankruptcy Code, they will not submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code. As described above and in the proposed order on this Motion, Zolfo Cooper shall file and provide notice of reports of compensation earned and expenses incurred on a monthly basis. Additionally, on behalf of

CAIR, Mr. Cooper, and itself, Zolfo Cooper shall file with the Court, with copies to the U.S. Trustee and any official committee appointed in these cases, a report of staffing on the engagement for the previous month. Such reports shall include the names and functions filled of the individuals assigned. Such notice will provide a time period for objections. All compensation and staffing will be subject to review by the Court in the event an objection is filed.

15. CAIR, Mr. Cooper, and Zolfo Cooper received a prepetition retainer of a total of $1,275,000 (the "Retainer"). The Retainer was applied prepetition against certain outstanding prepetition fees and expenses. CAIR, Mr. Cooper, and Zolfo Cooper will apply any remaining funds from the Retainer to amounts owed under the Agreement prior to seeking payment from the Debtors.

16. The Debtors believe that CAIR's, Mr. Cooper's, and Zolfo Cooper's compensation under the Agreement, as summarized above, is reasonable and justified under the circumstances.

## INDEMNIFICATION PROVISION

17. Consistent with the protocol established by the U.S. Trustee with respect to the retention of critical management services (the "Protocol"), CAIR, Mr. Cooper, and Zolfo Cooper each agree that those CAIR employees serving as "executive officers" of the Debtors, within the meaning contemplated by the Protocol (such "executive officers" of the Debtors from CAIR or Zolfo Cooper, the "Executive Officers"), including Mr. Cooper as a member of the Office of the CEO, will be entitled to receive whatever indemnities are made available during the term of the Agreement to other non-CAIR affiliated officers of the Debtors and non-Zolfo Cooper affiliated officers of the Debtors, whether under the by-laws, certificates of incorporation, applicable corporate laws, or contractual agreements of general applicability to officers of the

Debtors (the "Indemnification"). Additionally, and consistent with the Protocol, CAIR, Mr. Cooper, and Zolfo Cooper each agree to waive the Indemnification with respect to those CAIR and Zolfo Cooper indemnitees who do not serve as officers of the Debtors; provided, however, that CAIR and Zolfo Cooper personnel who are not officers of the Debtors shall be indemnified as may be approved by the Debtors' boards of directors.

18. CAIR's, Mr. Cooper's, and Zolfo Cooper's decision to provide management services to the Debtors under the Agreement is contingent upon their retention in accordance with terms and conditions of the Agreement. CAIR, Mr. Cooper, and Zolfo Cooper have indicated that they understand and accept that the terms of the Agreement must be approved by the Bankruptcy Court. However, CAIR, Mr. Cooper, and Zolfo Cooper would prefer to resolve at this time any objection, by the Bankruptcy Court or other parties in interest, with respect the terms of the Agreement. Accordingly, CAIR, Mr. Cooper, and Zolfo Cooper have chosen to be very explicit, in the Declarations and the Agreement, with respect the terms and conditions of their retention, their staffing and approach, and their billing practices. They have requested that the Debtors seek this Court's approval of such matters contemporaneously with the filing of this Motion.

**BASIS FOR RELIEF**

19. Section 363(b) of the Bankruptcy Code permits a debtor to use estate property "other than in the ordinary course of business" after notice and a hearing. 11 U.S.C. § 363(b)(1). Courts have authorized relief under section 363(b) where a debtor demonstrates a sound business justification for such relief. See Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a § 363(b) application expressly find from the evidence presented before him

at the hearing a good business reason to grant such an application."); In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("[T]he debtor must articulate some business justification, other than mere appeasement of major creditors.")

20. Once a debtor has articulated a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.), 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)).

21. The business judgment rule has vitality in chapter 11 cases. See Integrated Res., 147 B.R. at 656; see also Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 615-16 ("[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a Debtor's management decisions.").

22. Retaining CAIR, Mr. Cooper, and Zolfo Cooper under the Agreement serves the sound business purpose of ensuring that CAIR's, Mr. Cooper's, and Zolfo Cooper's critical management services remain in place as the Debtors transition into chapter 11, thereby maximizing the value of the Debtors' estates for the benefit of all parties in interest. Furthermore, it is noteworthy that bankruptcy courts have authorized the retention of Zolfo Cooper pursuant to section 363(b) in previous cases in other jurisdictions. See e.g., In re Mark IV Indus., Inc., No 09-12795 (Bankr. S.D.N.Y. May 1, 2009) (Zolfo Cooper was retained to serve as the debtors' chief restructuring officer); In re Flying J Inc., No. 08-13384 (Bankr. D. Del. Jan. 5, 2009) (same); In re Pacific Energy Resources Ltd., No. 09-1078 (Bankr. D. Del. Mar. 9, 2009) (same);

In re Hawaiian Telcom Commc'ns, Inc., No. 08-02005 (Bankr. D. Haw. Dec. 24, 2008) (same); In re Commerceconnect Media Holdings, Inc., No. 09-12765 (Bankr. D. Del. Aug. 9, 2009) (Zolfo Cooper was retained to serve as the debtors' chief executive officer); In re Friedman's Inc., No 08-10161 (Bankr. D. Del. Jan. 28, 2008) (same); In re TOUSA, Inc., No. 08-10928 (Bankr. S.D. Fla. Feb. 1, 2008) (Zolfo Cooper was retained to serve as the debtors' chief restructuring officer); In re American Home Mortgage Holdings, Inc., No. 07-11047 (Bankr. D. Del Sept. 5, 2007) (same).

23. The Debtors believe that CAIR, Mr. Cooper, and Zolfo Cooper negotiated the terms and conditions of the Agreement, including the Indemnification, at arm's length, and in good faith. The Debtors, CAIR, Mr. Cooper, and Zolfo Cooper believe that the indemnification language is customary and reasonable for similar engagements in chapter 11 cases, and reflects the qualifications and limitations on customary indemnification provisions.

24. The Debtors submit that the retention of CAIR, Mr. Cooper, and Zolfo Cooper is a sound exercise of their business judgment and satisfies section 363(b) of the Bankruptcy Code as CAIR's, Mr. Cooper's, and Zolfo Cooper's services are necessary and essential to the Debtors' restructuring efforts. In addition to the specific knowledge they have acquired about the Debtors' businesses, Mr. Cooper and the additional Associate Directors assigned to this engagement have extensive experience providing management services to distressed companies.

25. Denying the relief requested herein would deprive the Debtors of the assistance of highly qualified management professionals, to the detriment of the Debtors' estates. Accordingly, the Debtors respectfully submit that the services provided by CAIR, Mr. Cooper, and Zolfo Cooper are critical to the success of these chapter 11 cases and request that the Court

approve the Agreement and authorize the Debtors to perform thereunder, in each case <u>nunc pro tunc</u> to the Petition Date.

26. In the exercise of their business judgment, the Debtors have entered into the Agreement. The Debtors believe that the compensation to be provided under the Agreement, including the Success Fee, is reasonable and justified under the circumstances. The Debtors are informed that the Administrative Agent and the Subcommittee have consented to the Success Fee and have waived their rights to challenge the reasonableness of the Success Fee.

## NOTICE

27. Notice of this Motion has been given to (a) the U.S. Trustee for the Southern District of New York; (b) counsel to the administrative agent under the Debtors' prepetition credit agreement; and (c) the parties listed in the consolidated list of fifty (50) largest unsecured creditors filed by the Debtors in these bankruptcy cases. The Debtors submit that no other or further notice need be provided.

## NO PRIOR REQUEST

28. No prior request for the relief requested herein has been made to this or any other Court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order substantially in the form annexed hereto as <u>Exhibit B</u> (i) approving the Agreement and authorizing the Debtors to perform thereunder, in each case effective <u>nunc</u> <u>pro</u> <u>tunc</u> to the Petition Date, and (ii) granting such other and further relief as is just and proper.

Dated: New York, New York
November 8, 2010

SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP

By: <u>/s/ Jay M. Goffman</u>
Jay M. Goffman
Four Times Square
New York, New York 10036
(212) 735-3000

Nick P. Saggese
Rick C. Madden
Glenn S. Walter
300 South Grand Avenue
Suite 3400
Los Angeles, California 90071
(213) 687-5000

- and –

KLEE, TUCHIN, BOGDANOFF & STERN LLP
Kenneth N. Klee
Michael L. Tuchin
1999 Avenue of the Stars
Thirty-Ninth Floor
Los Angeles, California 90067

(310) 407-4000
Proposed Counsel for Debtors and
 Debtors in Possession