UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------x
                                 :
In re:                           : Chapter 11
                                 :
METRO-GOLDWYN-MAYER STUDIOS INC.,: Case No. 10-15774 (SMB)
et al.,                          :
                                 :
            Debtors.             : (Jointly Administered)
                                 :
                                 :
---------------------------------x

**DEBTORS' APPLICATION FOR ORDER UNDER 11 U.S.C. §§ 327(a) AND 328(a) AND FED. R. BANKR. P. 2014 AND 2016 AUTHORIZING EMPLOYMENT AND RETENTION OF MOELIS & COMPANY LLC AS FINANCIAL ADVISOR TO DEBTORS AND DEBTORS IN POSSESSION NUNC PRO TUNC TO THE PETITION DATE**

Metro-Goldwyn-Mayer Studios Inc. and certain of its affiliates, the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"),[1] hereby apply (the "Application") for entry of an order, under sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Bankruptcy Rules"), authorizing the Debtors to retain and employ Moelis & Company LLC ("Moelis") as their financial advisor, effective nunc pro tunc to the Petition Date (as defined below). In support of this Application, the Debtors rely on the declaration of Robert J. Flachs (the "Flachs Declaration") attached hereto as Exhibit C. In further support of this Application, the Debtors state as follows:

---

[1] The names of the Debtors in these jointly administered cases are identified on Exhibit A hereto.

**JURISDICTION AND VENUE**

1. This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code. Such relief is also warranted pursuant to Bankruptcy Rule 2014 and 2016, and Local Bankruptcy Rules 2014-1 and 2016-1.

**BACKGROUND**

3. The Debtors are engaged primarily in the development, production, and worldwide distribution of feature films, television programming, interactive media, music, and licensed merchandise. The Debtors' film and television library (the "MGM Library") contains approximately 4,100 theatrically released feature film titles and approximately 10,800 television episodes, and is one of the largest collection of post-1948 feature films in the world. Films in the MGM Library have won over 200 Academy Awards, including fifteen Best Picture Awards. The MGM Library also contains rights to many iconic film and television franchises, including twenty-four titles in the *James Bond* film franchise, six titles in the *Rocky* film franchise, and with respect to the *Stargate* franchise, one film, two direct-to-video titles and several television series, including *Stargate SG-1*, the longest running science fiction series in U.S. television history.

4. On the date hereof (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code. The factual background regarding the Debtors, including their business operations, their capital and debt structure and the events leading to the filing of these chapter 11 cases, is set forth in detail in the

Declaration of Stephen F. Cooper, a member of the Office of the Chief Executive Officer of MGM Holdings Inc.

5. The Debtors continue to operate their businesses and manage their properties as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases. As of the date hereof, no creditors' committee has been appointed.

6. On the Petition Date, the Debtors filed with the Court, among other things, (i) a joint prepackaged plan of reorganization (the "<u>Plan</u>") and (ii) disclosure statement related thereto. The Plan provides for the payment in full of all allowed general unsecured claims against the Debtors.

**RELIEF REQUESTED**

7. By this Application, the Debtors seek entry of an order, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Bankruptcy Rules 2014-1 and 2016-1, (a) authorizing the employment and retention of Moelis as the Debtors' financial advisor, effective <u>nunc pro tunc</u> to the Petition Date, under the terms and conditions set forth in that certain engagement letter dated as of April 9, 2009 (as amended, on March 17, 2010, the "<u>Engagement Letter</u>"), a copy of which is attached as <u>Exhibit 1</u> to the Flachs Declaration and (b) approving the terms and conditions of Moelis' employment, including the proposed fee structure set forth in the Engagement Letter, subject to the standards set forth in section 328(a) of the Bankruptcy Code and not subject to any additional standard of review set forth in section 330 of the Bankruptcy Code.

8. The Debtors request that any relief granted with respect to this Motion apply to any additional debtor in these cases (each, an "<u>Additional Debtor</u>") without further order of the Court. The Debtors propose that a debtor be deemed to be an Additional Debtor upon the

3

filing of a motion to have such debtor's chapter 11 case jointly administered with the chapter 11 cases of the Debtors.

## MOELIS' QUALIFICATIONS

9. Moelis is an investment banking firm with its principal office located at 399 Park Avenue, 5th Floor, New York, NY 10022. Moelis is a registered broker-dealer with the United States Securities and Exchange Commission and is a member of the Financial Industry Regulatory Authority and the Securities Investor Protection Corporation. Moelis was founded in 2007 and is a wholly owned subsidiary of Moelis & Company Holdings LLC. Moelis & Company Holdings LLC, together with its subsidiaries, has approximately 270 employees located in offices in New York, Los Angeles, Boston, Chicago, London and Sydney.

10. Moelis provides a broad range of corporate advisory services to its clients, including, without limitation, services pertaining to (a) general financial advice; (b) mergers, acquisitions, and divestitures; (c) corporate restructurings; (d) special committee assignments; and (e) capital raising. Moelis and its senior professionals have extensive experience in the reorganization and restructuring of distressed companies, in both out-of-court and chapter 11 proceedings.

11. The Debtors have selected Moelis as their financial advisor based upon, among other things, (a) the Debtors' need to retain a financial advisory firm to provide advice with respect to the Debtors' restructuring activities, and (b) Moelis' extensive experience and excellent reputation in providing financial advisory and investment banking services in complex chapter 11 cases such as these. Moreover, and as explained herein, Moelis has been advising the Debtors on a prepetition basis pursuant to the Engagement Letter, and as a result has gained valuable knowledge about the Debtors' business and operations.

4

12. Since Moelis' registration as a broker-dealer in 2007, it has provided advisory services to a number of clients, including Allied Waste Industries, Inc., Anheuser-Busch Companies, Inc., American Media, Inc., Cannery Casino Resorts, LLC, Emirate of Dubai, Greektown Holdings, LLC, Hilton Hotels Corporation, Invitrogen Corporation, NBTY, Inc., Pappas Telecasting Inc., WCI Steel, Inc., Westwood One, Inc., and Yahoo! Inc. In addition, Moelis has been actively involved in major chapter 11 cases and has been retained and employed by debtors in cases in this and other districts as a financial advisor, sales consultant, and/or investment banker. See, e.g., In re ION Media Networks, Case No. 09-13125 (JMP) (Bankr. S.D.N.Y. July 13, 2009); In re Idearc Inc., Case No. 09- 09-31828 (BH) (Bankr. N.D. Tex. May 27, 2009); In re Source Interlink, Case No. 09-11424 (KG) (Bankr. D. Del. May 21, 2009); In re Muzak Holdings LLC, Case No. 09-10422 (KJC) (Bankr. D. Del. Apr. 6, 2009); In re Aleris Int'l Inc., Case No. 09-10478 (BLS) (Bankr. D. Del. Mar. 16, 2009); In re Pappas Telecasting Inc., Case No. 08-10916 (PJW) (Bankr. D. Del. Aug. 13, 2008)

## MOELIS' PREPETITION SERVICES

13. Before the Petition Date, on April 9, 2009, the Debtors engaged Moelis to provide general investment banking and financial advice in connection with the Debtors' attempts to complete a strategic restructuring, reorganization and/or recapitalization of all or a significant portion of the Debtors' outstanding indebtedness, as well as to prepare for the potential commencement of chapter 11 cases.

14. In rendering prepetition services to the Debtors in connection with these matters, Moelis has worked closely with the Debtors' management and other retained professionals and has become well-acquainted with the Debtors' business operations and capital structure. Accordingly, Moelis has developed significant expertise regarding the Debtors that will assist it in its provision of effective and efficient services during these chapter 11 cases.

## SERVICES TO BE PROVIDED

15. Subject to further order of the Court and consistent with the terms of the Engagement Letter, in consideration for the compensation contemplated therein, Moelis' services may include, but are not limited to, the following financial advisory and investment banking services as necessary and requested by the Debtors:[2]

(a) undertake, in consultation with members of management of the Company, a customary business and financial analysis of the Company, including to the extent requested by the Company or its counsel in connection with any Bankruptcy Case, rendering expert testimony with respect to Moelis' analysis to assist the Company in fulfilling the requirements of the U.S. Bankruptcy Code;

(b) to the extent Moelis deems necessary, appropriate and feasible, or as the Company or its counsel may request, review and analyze the Company's assets and its operating and financial strategies;

(c) review and analyze the business plans and financial projections prepared by the Company including, but not limited to, testing assumptions and comparing those assumptions to historical Company and industry trends;

(d) evaluate the Company's debt capacity and assist in the determination of an appropriate capital structure for the Company;

(e) advise and assist counsel to the Company in the course of its preparation for and negotiation of any Restructuring Transaction and participate in such negotiations, as requested;

(f) advise the Company and its counsel on the risks and benefits of considering, initiating and consummating any Restructuring Transaction;

(g) determine values or ranges of values (as appropriate) for the Company and any securities that the Company offers or proposes to offer in connection with a Restructuring Transaction;

---

[2] The summaries of Engagement Letter terms throughout this Application, including with respect to services to be rendered, the Fee Structure (as defined below), and indemnification, are qualified in their entirety by reference to the provisions of the Engagement Letter. To the extent there is any discrepancy between the summaries contained in this Application and the terms set forth in the Engagement Letter, the terms of the Engagement Letter shall control. Unless otherwise defined, capitalized terms used in such summaries shall have the meanings ascribed to them in the Engagement Letter.

> (h) be available at the Company's request to meet with its management, board of directors, creditor groups, equityholders, any official committees appointed in a Bankruptcy Case, or other parties to discuss any Restructuring; and
>
> (i) such other financial advisory and investment banking services as may be agreed upon by Moelis and the Company, and that are within the scope of the Engagement Letter.

## COMPENSATION

16. Moelis intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtors' chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, guidelines established by the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee Guidelines") and any other applicable procedures and orders of the Court and consistent with the Fee Structure. Because the Debtors are seeking to retain Moelis under section 328(a) of the Bankruptcy Code, the Debtors believe that Moelis' compensation should not be subject to any additional standard of review under section 330 of the Bankruptcy Code.[3]

17. The Debtors have agreed to compensate and reimburse Moelis in accordance with the arrangement set forth in the Engagement Letter (such arrangement, the "Fee Structure"). In summary, the Fee Structure provides for the following compensation:[4] Upon either the consummation of a Restructuring Transaction or a Sale (as those terms are defined in the Engagement Letter), the Debtors shall pay Moelis a cash fee equal to $9,500,000 (the "Transaction Fee"). The Debtors shall pay the Transaction Fee immediately upon the

---

[3] Consistent with the practice in this district, Moelis has engaged in discussions with the Office of the United States Trustee in order to ensure that the proposed Order granting this Application is acceptable. The Debtors believe the proposed Order reflects the agreement reached with the U.S. Trustee.

[4] For a more detailed description of the Fee Structure, please see the Engagement Letter, which is attached to the Flachs Declaration as Exhibit 1.

7

consummation of a Restructuring Transaction or a Sale; *provided that*, in no event shall the Debtors be obligated to pay more than one Transaction Fee.[5]

19. In addition to any fees payable to Moelis, the Engagement Agreement obligates the Debtors to reimburse Moelis for all reasonable expenses incurred in connection with the Engagement Letter, including the reasonable fees, disbursements and other charges of Moelis' legal counsel in an amount not to exceed $25,000 (plus any additional amounts incurred in connection with prosecution of retention and fee applications in a Bankruptcy Case); provided that Moelis will notify the Debtors promptly if the reimbursable expenses exceed $175,000, and will obtain the Debtors' prior written consent (such consent not to be unreasonably withheld) if reimbursable expenses are to exceed $250,000.[6]

19. The Debtors understand that the Fee Structure, as described in the Engagement Letter, is consistent with employment and compensation arrangements typically entered into by Moelis. The Debtors believe that the Fee Structure is comparable to compensation generally charged by financial advisors of similar stature for comparable engagements, both in and out of court, and that the Fee Structure is market-based. Given the numerous issues that Moelis may be required to address in these chapter 11 cases, Moelis' commitment to the variable levels of time and effort necessary to address issues as they arise, and Moelis' experience and expertise, the Debtors believe that the Fee Structure is reasonable, and is designed to compensate Moelis fairly for its services.

---

[5] The Engagement Letter also provided for the payment of a monthly retainer fee of $200,000; however, pursuant to the terms of the Engagement Letter, the Debtors are no longer obligated to pay such a fee.

[6] Pursuant to discussions with the Office of the United States Trustee, Moelis has agreed that any such request for reimbursement would be made at the time of submitting interim or final applications, and the U.S. Trustee reserves the right to object to such reimbursement of expenses.

20. Moelis will file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the U.S. Trustee Guidelines and any other applicable procedures and orders of the Court.

21. The Debtors intend for Moelis to receive payment of its fees on a fixed-rate basis, contingent upon the occurrence of a transaction, which is customary in the investment banking industry.

22. Consistent with the ordinary practices of Moelis and other financial advisory and investment banking firms, which do not employ hours-based fee arrangements, Moelis does not typically maintain time records in increments of one tenth (0.10) of an hour or provide or conform to a schedule of hourly rates for its professionals. When required to do so, Moelis' restructuring professionals (with the exception of administrative or support personnel) have kept time records in one-half-hour (.5) increments describing their activities and the identities of the persons performing such activities. In addition, Moelis' restructuring professionals do not categorize their time on a project basis.

23. Accordingly, to the extent Moelis would be required to submit more detailed time records for its professionals pursuant to the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the U.S. Trustee Guidelines or any other applicable procedures and orders of the Court, the Debtors request that the Court modify such requirements, such that Moelis shall be allowed to keep time records in accordance with the practices described above.

24. Before the Petition Date, the Debtors paid Moelis approximately $1,000,000 for fees and approximately $181,994 in expenses billed through October 31, 2010 for

Moelis' representation of the Debtors pursuant to the terms of the Engagement Letter. As of the Petition Date, Moelis holds a prepetition claim against the Debtors for services rendered, contingent upon the occurrence of a Restructuring Transaction, but will waive such claim upon approval of this Application.[7] To the extent that Moelis is holding funds from the Debtors in excess of fees earned and reimbursements due as of the Petition Date, Moelis will hold such excess funds as a retainer to be applied against postpetition fees and expenses due from the Debtors to Moelis, subject to compliance with applicable fee motion requirements.

## INDEMNIFICATION PROVISIONS

25. The Debtors have agreed to indemnify, and pay certain contributions to, Moelis in accordance with the terms and conditions set forth in Engagement Letter, including Annex A thereto (collectively, the "Indemnification Provisions"). Under the Indemnification Provisions, the Debtors have, among other things, agreed to reimburse, indemnify, and hold Moelis and other Indemnified Persons (as defined in the Engagement Letter) harmless from and against any losses, claims, liabilities, damages, and expenses incurred to or by any such person in connection with the services provided to the Debtors, except for any losses, claims, damages or liabilities that are finally determined by a court or arbitral tribunal to have resulted primarily from the bad faith, willful misconduct, or gross negligence of an Indemnified Person.

26. The Debtors and Moelis negotiated the Engagement Letter, including the Indemnification Provisions, at arm's length. The Debtors believe that the Indemnification Provisions are customary and reasonable terms of consideration for financial advisors such as Moelis in connection with in-court and out-of-court restructuring activities, and that approval of

---

[7] In this regard, it is important to note that general unsecured creditors are being paid in full under the Plan, and Moelis' agreement to waive its claim under the Engagement Letter is expressly conditioned upon approval of this Application, including the requested standard of review under section 328(a) of the Bankruptcy Code.

the Engagement Letter and the Indemnification Provisions is in the best interest of the Debtors and the estates.

## MOELIS' DISINTERESTEDNESS

27. To the best of the Debtors' knowledge and except to the extent disclosed in the Flachs Declaration, Moelis does not (a) hold or represent an interest adverse to the Debtors' estates or (b) have any connection to the Debtors, their creditors or other relevant parties

28. To the extent that Moelis discovers any new relevant facts or relationships bearing on the matters described herein during the period of Moelis' retention, Moelis will use reasonable efforts to supplement the Flachs Declaration.

## APPLICABLE AUTHORITY

29. The Debtors seek approval of the Engagement Letter and the Fee Structure set forth therein pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that the Debtors, "with the court's approval, may employ or authorize the employment of a professional person under § 327 [of the Bankruptcy Code] . . . on any reasonable terms and conditions of employment." 11 U.S.C. § 328(a). Section 328(a) of the Bankruptcy Code permits the compensation of professionals, including investment bankers and financial advisors, on more flexible terms that reflect the nature of their services and market conditions. As the United States Court of Appeals for the Fifth Circuit recognized in <u>In re National Gypsum Co.</u>,

> Prior to 1978, the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. The uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by

> obtaining court approval of compensation agreed to with the
> trustee (or debtor or committee).

123 F.3d 861, 862 (5th Cir. 1997) (citations omitted).

30. Furthermore, under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, a change was made to section Bankruptcy Code § 328(a) that is highlighted in bold below:

> The trustee, or a committee appointed under § 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under §§ 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, **on a fixed or percentage fee basis**, or on a contingent fee basis.

11 U.S.C. § 328(a) (emphasis added). This change clarifies that the Debtors, with court approval, may retain a professional on a fixed fee basis. Accordingly, section 328(a) of the Bankruptcy Code permits the Court to approve the terms and conditions of Moelis' engagement, as set forth in the Engagement Letter, including, without limitation, the Fee Structure.

31. The Fee Structure appropriately reflects the nature and scope of services provided and to be provided by Moelis in the context of Moelis' substantial experience and expertise, and is consistent with fee structures typically utilized by Moelis and other leading financial advisors, which do not bill their clients on an hourly basis. Fee arrangements similar to the Fee Structure have been approved in other cases in this district. The Debtors therefore request that the Court approve the retention of Moelis, including the payment of compensation and reimbursement of expenses to Moelis in accordance with the Fee Structure, pursuant to section 328(a) of the Bankruptcy Code. The Debtors further request that such payment of compensation and reimbursement of expenses not be subject to any additional standard of review under section 330 of the Bankruptcy Code.

## NOTICE

32. Notice of this Motion has been given to (a) the U.S. Trustee for the Southern District of New York; (b) counsel to the administrative agent under the Debtors' prepetition credit agreement; and (c) the parties listed in the consolidated list of fifty (50) largest unsecured creditors filed by the Debtors in these bankruptcy cases. The Debtors submit that no other or further notice need be provided.

## NO PRIOR REQUEST

33. No prior request for the relief requested herein has been made to this or any other Court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit B, granting the relief requested in this Application and such other and further relief as may be just and proper.

Dated: November 8, 2010

                METRO-GOLDWYN-MAYER STUDIOS INC., et al.,

                By: /s/ Scott Packman
                    Scott Packman, Executive Vice President, General Counsel, and Secretary