UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :
In re:                                  :     Chapter 11
                                        :
METRO-GOLDWYN-MAYER STUDIOS INC.,       :     Case No. 10-15774 (SMB)
et al.,                                 :
                                        :
            Debtors.                    :     (Jointly Administered)
                                        :
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER (I) APPROVING (A) THE DISCLOSURE STATEMENT, (B) SOLICITATION OF VOTES AND VOTING PROCEDURES, AND (C) FORMS OF BALLOTS AND (II) CONFIRMING THE AMENDED JOINT PREPACKAGED PLAN OF REORGANIZATION OF METRO-GOLDWYN-MAYER-STUDIOS INC. AND CERTAIN OF ITS AFFILIATES**

Upon the motion (the "Scheduling Motion") (Docket No. 29) of Metro-Goldwyn-Mayer Studios Inc. and certain of its affiliates, debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors")[1] filed with the United States Bankruptcy Court for the Southern District of New York (the "Court"), for entry of an order (a) scheduling a combined hearing (the "Combined Hearing") to consider approval of the adequacy of the *Disclosure Statement Relating to Joint Prepackaged Plan of Reorganization of Metro-Goldwyn-Mayer-Studios Inc. and Certain of Its Affiliates* (the "Disclosure Statement"), confirmation of the *Debtors' Joint Prepackaged Plan of Reorganization of Metro-Goldwyn-Mayer-Studios Inc. and Certain of Its Affiliates* (as amended and supplemented, the "Plan"),[2] and adequacy of the solicitation procedures (the "Solicitation Procedures") utilized in connection with the prepetition

---

[1]  The names of the Debtors in these jointly administered cases are identified on Exhibit 1  hereto.

[2]  Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to such terms in the Plan, a copy of which is annexed hereto as Exhibit 2.

solicitation of votes to accept or reject the Plan, (b) establishing procedures for objecting to the Disclosure Statement, the Plan, and the Solicitation Procedures, (c) approving the form, manner, and sufficiency of notice of the Combined Hearing, and (d) granting related relief; and upon the order entered on November 4, 2010 granting the Scheduling Motion (the "<u>Scheduling Order</u>") (Docket No. 46); and the Court on December 2, 2010 having held a hearing pursuant to section 1129 of the Bankruptcy Code to consider confirmation of the Plan (the "<u>Confirmation Hearing</u>"); and the Court having considered (i) the Debtors' *Memorandum of Law in Support of Entry of an Order (I) Approving (A) the Debtors' Disclosure Statement Pursuant to 11 U.S.C. §§ 1125 and 1126(b), (B) Solicitation of Votes and Voting Procedures, and (C) Forms of Ballots, and (II) Confirming the Amended Joint Prepackaged Plan of Reorganization of Metro-Goldwyn-Mayer Studios Inc. and Certain of Its Affiliates* (Docket No. 148), (ii) the *Declaration of Stephen F. Cooper in Support of Confirmation of the Amended Joint Prepackaged Plan of Reorganization of Metro-Goldwyn-Mayer Studios Inc. and Certain of Its Affiliates* (Docket No. 149) (the "<u>Cooper Declaration</u>") filed by the Debtors in advance of the Confirmation Hearing, and (iii) the *Declaration of Robert J. Flachs in Support of Confirmation of the Amended Joint Prepackaged Plan of Reorganization of Metro-Goldwyn-Mayer Studios Inc. and Certain of Its Affiliates* (Docket No. 150) (the "<u>Flachs Declaration</u>") filed by the Debtors in advance of the Confirmation Hearing; and the Court having admitted into the record and considered evidence at the Confirmation Hearing; and the Court having taken judicial notice of the contents of the docket of the Chapter 11 Cases maintained by the Clerk of the Court and/or its duly-appointed agent, including all pleadings and other documents filed and orders entered thereon; and after due deliberation thereon and good and sufficient cause appearing therefore,

It hereby is DETERMINED, FOUND, ADJUDGED, DECREED AND

ORDERED THAT:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.      Findings of Fact and Conclusions of Law.  The findings of fact and

conclusions of law stated in this Confirmation Order shall constitute findings of fact and

conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding by

Bankruptcy Rule 9014.  To the extent any finding of fact shall be determined to be a conclusion

of law, it shall be so deemed, and to the extent a conclusion of law shall be determined to be a

finding of fact, it shall be so deemed.

B.      Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2) and

1334(a)).  This Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157

and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is

a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and this Court has jurisdiction to

determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and

should be confirmed.

C.      Filing of Plan.  On November 3, 2010 (the "Petition Date"), the Debtors

filed their Plan (Docket No. 28) and the Disclosure Statement (Docket No. 27).  On the Petition

Date, the Debtors' also filed the *Motion for Order Under 11 U.S.C. Sections 105 and 1127 and*

*Fed. R. Bankr. P. 3019(a) (I) Finding that Plan Modifications are Non-Material and (II)*

*Deeming the Plan, as Modified, Accepted by Class 3 Creditors Who Previously Accepted the*

*Plan* (Docket No. 30) (the "Plan Modification Motion").  On November 12, 2010, this Court

entered an order granting the Plan Modification Motion (Docket No. 122).  On November 23,

2010, the Debtors filed the *Amended Joint Prepackaged Plan of Reorganization of Metro-*

*Goldwyn-Mayer Studios Inc. and Certain of Its Affiliates* (Docket No. 142). The Plan is a single

plan of reorganization for these jointly administered chapter 11 cases, but does not constitute a

substantive consolidation of the Debtors' estates.

        D.      <u>Transmittal of Solicitation Package</u>. As set forth in the *Declaration of*

*Jung W. Song, Esq. of Donlin, Recano & Company, Inc. with Respect to the Tabulation of Votes*

*and Certifying the Results of Prepetition Solicitation on the Joint Prepackaged Plan of*

*Reorganization of Metro-Goldwyn-Mayer Studios Inc. and Certain of its Affiliates* (Docket No.

33) (the "<u>Tabulation Declaration</u>"), on October 7, 2010, the Debtors, through their solicitation

agent, Donlin, Recano & Company, Inc. ("<u>Donlin Recano</u>"), caused the Plan, Disclosure

Statement and voting ballots (collectively, the "<u>Solicitation Packages</u>") to be served and

distributed as required by sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules

3017 and 3018, the local rules of Bankruptcy Court of the Southern District of New York (the

"<u>Local Rules</u>"), the *Amended Procedural Guidelines for Prepackaged Chapter 11 Cases in the*

*United States Bankruptcy Court for the Southern District of New York*, Administrative Order 387,

amending General Order 203 (the "<u>Prepack Guidelines</u>"), all other applicable provisions of the

Bankruptcy Code, the Scheduling Order, and all other applicable rules, laws, and regulations

applicable to such solicitation. The Solicitation Packages were transmitted to holders of Class 3

Credit Agreement Claims, the only class of creditors entitled to vote on the Plan.

        E.      <u>Mailing and Publication of Combined Notice</u>. On November 8, 2010, the

Debtors caused to be mailed the *Summary of Plan of Reorganization and Notice of Combined*

*Hearing on (A) Adequacy of the Disclosure Statement and Solicitation Procedures and (B)*

*Confirmation of Plan of Reorganization and Related Matters* (the "<u>Combined Hearing</u>") to all of

the Debtors' known creditors and interest holders.  <u>See</u> Affidavit of Service of Muhammed Habib (Docket No. 99).

F. Additionally, the Debtors caused the notice of Combined Hearing to be published in The Wall Street Journal (National Edition) on Monday, November 15, 2010.  <u>See</u> Affidavit re: Publication in the Wall Street Journal of Summary of Plan of Reorganization and Notice of Combined Hearing on (A) Adequacy of the Disclosure Statement and Solicitation Procedures and (B) Confirmation of Plan of Reorganization and Related Matters filed on November 18, 2010 (Docket No. 135).

G. <u>Objections</u>.  All objections and all reservations of rights that have not been withdrawn, waived or settled, pertaining to the Disclosure Statement, the Solicitation Procedures or confirmation of the Plan are overruled on the merits.

H. <u>Adequacy of Disclosure Statement</u>.  Because no offer or distribution of securities which is subject to federal or state securities or "blue sky" laws is being made under the Plan and no other applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with the prepetition solicitation applies, the adequacy of the Disclosure Statement is governed by Bankruptcy Code section 1125(a).  The Disclosure Statement contains adequate information as that term is defined in Bankruptcy Code section 1125(a) and complies with any additional requirements of the Bankruptcy Code and the Bankruptcy Rules.  Specifically, but without limitation, the Disclosure Statement complies with the requirements of Bankruptcy Rule 3016(c) by sufficiently describing in specific and conspicuous bold language the provisions of the Plan that provide for releases and injunctions

against conduct not otherwise enjoined under the Bankruptcy Code and sufficiently identifies the persons and entities that are subject to the releases and injunctions.

I.        Solicitation.  Section 1126(b) of the Bankruptcy Code applies to the solicitation of acceptances and rejections of the Plan prior to the commencement of these chapter 11 cases.  The solicitation of acceptances and rejections of the Plan was exempt from the registration requirements of the Securities Act of 1933 (as amended, and including the rules and regulations promulgated thereunder, the "Securities Act") and applicable state and local securities laws, and no other non-bankruptcy law applies to the solicitation.  The Disclosure Statement contains adequate information within the meaning of, and for all purposes under, sections 1125 and 1126(b) of the Bankruptcy Code.  Votes for acceptance or rejection of the Plan were solicited in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, and all other applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Prepack Guidelines, and all other rules, laws, and regulations applicable to such solicitation.

J.        In particular, the solicitation of votes to accept or reject the Plan satisfies Bankruptcy Rule 3018.  The Plan and the Disclosure Statement were transmitted to all creditors entitled to vote on the Plan and sufficient time was prescribed for such creditors to accept or reject the Plan.  The solicitation materials and solicitation procedures comply with section 1126 of the Bankruptcy Code, thereby satisfying the requirements of Bankruptcy Rule 3018.

K.        The Debtors' procedures for transmitting the Disclosure Statement, the Plan, the Ballots, and the voting instructions are adequate and comply with the requirements of Bankruptcy Rule 3017(d) and (e), all other applicable provisions of the Bankruptcy Code, the

Bankruptcy Rules, the Local Rules, the Prepack Guidelines, the Scheduling Order, and all other applicable rules, laws, and regulations.

L.      The form of the Ballots was adequate and appropriate and complied with Bankruptcy Rule 3018(c).  The form of the Ballots was sufficiently consistent with Official Form No. 14 and the form of ballot annexed to the Prepack Guidelines and adequately addressed the particular needs of these Chapter 11 Cases and was appropriate for the Class entitled to vote to accept or reject the Plan.

M.      The establishment of the Voting Deadline for Class 3 as October 29, 2010, is reasonable under Bankruptcy Rule 3018(b) and does not prescribe an unreasonably short time for creditors to accept or reject the Plan.

N.      Due, adequate, and sufficient notice of the Disclosure Statement, the Plan, and the Confirmation Hearing, along with deadlines for voting on the Plan and the Disclosure Statement, has been given to all known holders of Claims entitled to vote on the Plan.  No other or further notice is or shall be required.

O.      <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>.  All persons within the definition of Released Parties and Exculpated Parties have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code as well as the exculpation and limitation of liability provisions set forth in Article IX of the Plan.

P.      <u>Tabulation Results</u>.  On November 3, 2010, the Debtors filed the Tabulation Declaration (Docket No. 33), certifying the method and results of the ballot

tabulation for Class 3, the only class of creditors entitled to vote on the Plan. As evidenced by the Tabulation Declaration, the holders of Class 3 Credit Agreement Claims have accepted the Plan in accordance with section 1126 of the Bankruptcy Code. On November 11, 2010, the Debtors filed the *Supplemental Declaration of Jung W. Song, Esq. of Donlin, Recano & Company, Inc. with Respect to the Tabulation of Votes and Certifying the Results of Prepetition Solicitation on the Joint Prepackaged Plan of Reorganization of Metro-Goldwyn-Mayer Studios Inc. and Certain of Its Affiliates* (Docket No. 98), which details the modification of certain votes for the underlying claims from reject to accept.

Q. All procedures used to tabulate the Ballots were fair and reasonable and conducted in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Prepack Guidelines, the Scheduling Order, and all other applicable rules, laws, and regulations.

R. <u>Bankruptcy Rule 3016</u>. The Plan (including all modifications thereto) is dated and identifies the entities submitting it, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Disclosure Statement with the Clerk of the Court simultaneously with the Plan satisfied Bankruptcy Rule 3016(b).

S. <u>Burden of Proof</u>. As more fully set forth herein, the Debtors, as proponents of the Plan, have met their burden of proving each of the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation.

T. <u>Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>. The Plan satisfies section 1129(a)(1) of the Bankruptcy Code because it complies with the applicable

provisions of the Bankruptcy Code, including, but not limited to:  (a) the proper classification of Claims and Interests (11 U.S.C. §§ 1122, 1123(a)(1)); (b) the specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2)); (c) the specification of treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)); (d) provision for the same treatment of each Claim or Interest within a Class (11 U.S.C. § 1123(a)(4)); (e) provision for adequate and proper means for implementation (11 U.S.C. § 1123(a)(5)); (f) provision for the inclusion in the organizational documents of the Reorganized Debtors of  the prohibition against the issuance of non-voting equity securities (11 U.S.C. § 1123(a)(6)); (g) adequate disclosure of the manner of selection of the directors and officers of the Reorganized Debtors (11 U.S.C. § 1123(a)(7)); and (h) additional plan provisions permitted  by section 11 U.S.C. § 1123(b) of the Bankruptcy Code.

(a)     Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1)).  In particular, Article III of the Plan adequately and properly identifies and classifies all Claims and Interests.  The Plan designates five (5) Classes of Claims and two (2) Classes of Interests.  Thus, the Plan satisfies section 1123(a)(1) of the Bankruptcy Code.  The Claims or Interests placed in each Class are substantially similar to other Claims or Interests, as the case may be, in each such Class, and such classification therefore satisfies section 1122 of the Bankruptcy Code.

(b)     Specified Treatment of Unimpaired Class (11 U.S.C. § 1123(a)(2)). The Plan specifies in Article III that Classes 1, 2, 4, 5, and 6 are Unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(c)     Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). The Plan specifies in Article III that Classes 3 and 7 are Impaired under the Plan and sets forth the treatment of the Impaired Classes in Article III of the Plan, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(d)  No Discrimination (11 U.S.C. § 1123(a)(4)).  Article III of the Plan provides for the same treatment for each Claim or Interest in each respective Class unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest.  Accordingly, the Plan satisfies section 1123(a)(4) of the Bankruptcy Code.

(e)  Implementation of the Plan (11 U.S.C. § 1123(a)(5)).  Article V of the Plan provides adequate and proper means for implementation of the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

(f)  Nonvoting Equity Securities (11 U.S.C. § 1123(a)(6)).  Section 5.1 of the Plan provides that the organizational documents of each Reorganized Debtor shall be amended as necessary to satisfy the provisions of the Plan and the Bankruptcy Code, including section 1123(a)(6).  The Restated Certificate of Incorporation of MGM Holdings Inc. shall provide that the Reorganized Debtors shall not issue any non-voting equity securities to the extent required by Bankruptcy Code section 1123(a)(6).  The foregoing satisfies section 1123(a)(6) of the Bankruptcy Code, and the Debtors are not required to amend the organizational documents of the Subsidiary Debtors.

(g)  Selection of Officers and Directors (11 U.S.C. § 1123(a)(7)).  The Debtors have filed a notice with the Court designating the Reorganized Debtors' new officers and members of the board of directors or managers, as applicable, of the Reorganized Debtors (the "D/O Designations") (Docket No. 144).  The D/O Designations are consistent with the interests of creditors and with public policy and, thus, satisfy section 1123(a)(7) of the Bankruptcy Code.

U.  Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)).  The Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Scheduling Order, and other orders of this Court, thereby satisfying

section 1129(a)(2) of the Bankruptcy Code.  In particular, the Debtors are properly debtors under section 109 of the Bankruptcy Code.  The Debtors are proper proponents of the Plan pursuant to section 1121(a) of the Bankruptcy Code.  The Debtors, as proponents of the Plan, have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Prepack Guidelines and the Scheduling Order in transmitting the Solicitation Packages and notices and in soliciting and tabulating votes on the Plan.

V. <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>.  The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, and the formulation of the Plan and all modifications thereto.  The Chapter 11 Cases were filed, and the Plan and all modifications thereto were proposed, with the legitimate and honest purpose of reorganizing and maximizing the value of the Debtors and the recovery to claimholders.  Therefore, the Debtors have proposed the Plan in good faith and not by any means forbidden by law, and section 1129(a)(3) of the Bankruptcy Code is satisfied with respect to the Plan.

W. <u>Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>. Any payment made or to be made by the Debtors for services or for costs and expenses in, or in connection with, the Chapter 11 Cases, including administrative expense and substantial contribution claims under sections 503 and 507 of the Bankruptcy Code, or in connection with the Plan and incident to the Chapter 11 Cases, either has been approved by or is subject to the approval of the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

X.  Board of Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).  In accordance with Section 5.15 of the Plan, the Debtors have filed a notice of D/O Designations. The appointment to, or continuance in, such office of each individual, is consistent with the interests of holders of Claims and Interests, and with public policy.  Furthermore, pursuant to the D/O Designations, the Debtors have adequately disclosed the retention of insiders, and proposed compensation related thereto.  Therefore, section 1129(a)(5) of the Bankruptcy Code is satisfied with respect to the Plan.

Y.  No Rate Changes (11 U.S.C. § 1129(a)(6)).  Section 1129(a)(6) of the Bankruptcy Code is satisfied because the Plan does not provide for any change in rates over which a governmental regulatory commission has jurisdiction.

Z.  Best Interests Test (11 U.S.C. § 1129(a)(7)).  The liquidation analysis attached as Appendix B to the Disclosure Statement, the Cooper Declaration, the Flachs Declaration and other evidence proffered or adduced at the Confirmation Hearing (1) are persuasive and credible, (2) are based upon reasonable and sound assumptions, (3) provide a reasonable estimate of the liquidation values of the Debtors upon hypothetical conversion to cases under Chapter 7 of the Bankruptcy Code, and (4) establish that each holder of a Claim or Interest in an Impaired Class that has not accepted the Plan will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on such date.  Therefore, the Plan satisfies section 1129(a)(7) of the Bankruptcy Code.

AA.    Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).  Classes 1, 2, 4, 5, and 6 are Unimpaired by the Plan and therefore, under section 1126(f) of the Bankruptcy Code, such Classes are conclusively presumed to have accepted the Plan.  Class 3 was entitled to vote on the Plan and such Class has voted to accept the Plan.  Accordingly, Bankruptcy Code section 1129(a)(8) has been satisfied with respect to Classes 1 through 6.  Class 7 is deemed to reject the Plan and, therefore, section 1129(a)(8) of the Bankruptcy Code has not been satisfied with respect to that Class.  Nevertheless, pursuant to paragraphs GG and HH, the Plan may be confirmed because the Debtors have met the requirements of section 1129(b) of the Bankruptcy Code.

BB.    Treatment of Administrative and Priority Tax Claims and Other Priority Claims (11 U.S.C. § 1129(a)(9)).  The treatment of Administrative Claims and other priority claims under the Plan satisfies the requirements of section 1129(a)(9)(A) and (B) of the Bankruptcy Code, and the treatment of Priority Tax Claims under the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

CC.    Acceptance By Impaired Class (11 U.S.C. § 1129(a)(10)).  The Plan has been accepted by Class 3, the only impaired class entitled to vote on the Plan, without including any acceptance of the Plan by any "insiders."  Therefore, section 1129(a)(10) of the Bankruptcy Code is satisfied with respect to the Plan.

DD.    Feasibility (11 U.S.C. § 1129(a)(11)).  The Plan does not provide for the liquidation of all or substantially all of the property of the Debtors.  The financial projections in Appendix C to the Disclosure Statement, the Cooper Declaration, and the evidence proffered or adduced at the Confirmation Hearing (i) are persuasive and credible, (ii) have not been

controverted by other credible evidence or sufficiently challenged in any of the objections to the Plan, and (iii) establish that the Plan is feasible and that confirmation of the Plan is not likely to be followed by the liquidation of the Reorganized Debtors or the need for further financial reorganization of the Reorganized Debtors. Therefore, the Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

EE.     Payment of Fees (11 U.S.C. § 1129(a)(12)). The Debtors have paid or, pursuant to the Plan, will pay by the Effective Date, fees payable under 28 U.S.C. § 1930, thereby satisfying section 1129(a)(12) of the Bankruptcy Code.

FF.     Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)). Pursuant to Section 7.2 of the Plan, the Reorganized Debtors will continue to pay "retiree benefits" (as defined in section 1114(a) of the Bankruptcy Code) at the levels established pursuant to subsections (e)(1)(B) or (g) of section 1114 of the Bankruptcy Code, at any time prior to the confirmation of the Plan, for the duration of the periods the Debtors have obligated themselves to provide such benefits, and subject to any contractual rights to terminate or modify such benefits. Thus, the Plan satisfies section 1129(a)(13) of the Bankruptcy Code.

GG.     Section 1129(b); Confirmation of The Plan Over Nonacceptance of Impaired Classes. Holders of Claims in Class 7 are deemed to have rejected the Plan (the "Rejecting Class"). All of the requirements of section 1129(a) of the Bankruptcy Code, other than section 1129(a)(8) with respect to such Class, have been met. Notwithstanding the fact that the Rejecting Class is deemed to reject the Plan and thus does not satisfy section 1129(a)(8), the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code because the Plan does not discriminate unfairly and is fair and equitable with respect to the Rejecting Class.

HH.     The Plan does not discriminate unfairly because all of the Interests in Holdings are placed into the same Class 7 under the Plan and given the same treatment. Accordingly, the Plan does not discriminate unfairly against the Rejecting Class.  The Plan is fair and equitable with respect to the Rejecting Class because, in accordance with Bankruptcy Code section 1129(b)(2)(C), no holders of Interests junior to the holders of Interests in such Rejecting Class will receive or retain any property under the Plan on account of such Interests.  Thus, the Plan may be confirmed notwithstanding the Debtors' inability to satisfy section 1129(a)(8) of the Bankruptcy Code.  After entry of the Confirmation Order and upon the occurrence of the Effective Date, the Plan shall be binding upon the members of the Rejecting Class.

II.     <u>Principal Purpose of Plan (11 U.S.C. § 1129(d))</u>.  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.  Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

JJ.     <u>Executory Contracts</u>.  The Debtors have exercised reasonable business judgment in determining whether to assume or reject their executory contracts (including licenses) and unexpired leases pursuant to Article VII of the Plan.  Each assumption or rejection of an executory contract or unexpired lease (including licenses) pursuant to Article VII of the Plan shall be legal, valid and binding upon the applicable Debtor or Reorganized Debtor and their assignees or successors and all non-Debtor parties (and their assignees or successors) to such executory contract or unexpired lease, all to the same extent as if such assumption or rejection had been effectuated pursuant to an order of the Court entered before the Confirmation Date under section 365 of the Bankruptcy Code.

KK.     Adequate Assurance.  The Debtors have cured, or provided adequate

assurance that the Reorganized Debtors or their successors or assignees will cure, defaults (if any)

under or relating to each of the executory contracts and unexpired leases that are being assumed

by the Debtors pursuant to the Plan.

LL.     Releases and Discharges.  Each of the discharge, release, injunction,

indemnification and exculpation provisions set forth in Article IX of the Plan: (i) is within the

jurisdiction of the Court under 28 U.S.C. § 1334, (ii) is an essential means of implementing the

Plan pursuant to section 1123(a)(5) of the Bankruptcy Code, (iii) is an integral element of the

transactions incorporated into the Plan, (iv) confers a material benefit on, and is in the best

interests of, the Debtors, their Estates and their creditors, (v) is important to the overall

objectives of the Plan to finally resolve all Claims among or against the parties in interest in the

Chapter 11 Cases with respect to the Debtors, their organization, capitalization, operation and

reorganization, and (vi) is consistent with sections 105, 1123, 1129, and other applicable

provisions of the Bankruptcy Code.

MM.     Issuance of New Common Stock.  Issuance of the New Common Stock is

an essential element of the Plan and is in the best interests of the Debtors, their Estates, and their

creditors.  The Debtors are authorized, without further approval of this Court or any other party,

to issue the New Common Stock in accordance with the Plan and to execute and deliver all

agreements, documents, instruments, and certificates relating thereto.

NN.     Distributions of New Common Stock Are Exempt.  Any distribution of the

New Common Stock to holders of Class 3 Credit Agreement Claims is exempt from the

requirements of section 5 of the Securities Act, as amended, and any state or local laws requiring

registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security pursuant to section 1145(a) of the Bankruptcy Code.

OO.    <u>Exit Credit Facility</u>.  The Reorganized Debtors' assumption of all obligations, including without limitation, all monetary obligations under, and in respect of, the exit facility (the "<u>Exit Credit Facility</u>") is an exercise of reasonable business judgment, proposed in good faith, critical to the success and feasibility of the Plan and in the best interests of the Debtors, the Reorganized Debtors, the Estates and creditors.  The financial accommodations extended to the Reorganized Debtors pursuant to the Exit Credit Facility have been extended and implemented in good faith and for legitimate business purposes.  The guarantee obligations, liens, security interests, claims, liabilities and other obligations of the Reorganized Debtors created under or in respect of the Exit Credit Facility are valid, binding, properly perfected and enforceable and not subject to avoidance.  All documentation relating to the Exit Credit Facility will continue to be valid, binding and enforceable agreements and is not in conflict with any applicable federal or state law.

PP.    <u>Restructuring Transactions and Transaction Documents</u>.  The Reorganized Debtors' entry into and assumption of all obligations under and in respect of the Transaction Documents is an exercise of reasonable business judgment, proposed in good faith, critical to the success and feasibility of the Plan and in the best interests of the Debtors, the Reorganized Debtors, the Estates and creditors.  The Transaction Documents and the transactions contemplated by Article V of the Plan and described in Plan Exhibits A, C, D, E and F (the "<u>Transactions</u>") were negotiated, proposed, and entered into or will be entered into, as the case may be, by the Debtors, the Reorganized Debtors, and the counterparties thereto without collusion, in good faith, and from arm's length bargaining positions.  All Transaction Documents

heretofore executed will continue to be valid, binding and enforceable agreements and are not in conflict with any applicable federal or state law, and all Transaction Documents to be executed following entry of this Confirmation Order, upon their execution, will be valid, binding and enforceable agreements and will not be in conflict with any applicable federal or state law.

QQ.     Good Faith.  The Debtors, the Secured Lenders, the Administrative Agent, Spyglass, the Management Stakeholders, and Steering Committee (and all of their respective present and former stockholders, members, officers, directors, partners, employees, representatives, advisors, attorneys, professionals, affiliates, agents, and successors) have been, are and will continue to act in good faith if they proceed to (a) consummate the Plan and (b) take the actions authorized and directed by the Confirmation Order.

RR.     Plan Conditions to Confirmation.  The conditions to Confirmation set forth in Section 8.1 of the Plan have been satisfied or waived in accordance with the terms of the Plan.

SS.     Plan Conditions to Consummation.  Each of the conditions to the Effective Date, as set forth in Section 8.2 of the Plan, is reasonably likely to be satisfied or waived in accordance with the terms of the Plan.

TT.     Retention of Jurisdiction.  The Court properly may retain jurisdiction over the matters set forth in Article X of the Plan.

## DECREES

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

### Confirmation of Plan

1.      Approval Of Disclosure Statement.  Pursuant to Bankruptcy Rule 3017(b), the Disclosure Statement is approved as containing adequate information within the meaning of Bankruptcy Code section 1125(a).

2.      Solicitation.  The Solicitation Procedures, including the procedures for transmittal of Solicitation Packages and the form of Ballots, are approved under sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Scheduling Order, the Prepack Guidelines, the Local Rules, all other applicable provisions of the Bankruptcy Code, and all other rules, laws, and regulations applicable to such solicitation.  The solicitation materials are approved under sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Scheduling Order, the Prepack Guidelines, the Local Rules, all other applicable provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations.

3.      Confirmation.  The Plan, attached hereto as Exhibit B (as modified by this Order), including all Exhibits attached thereto, is approved and confirmed under section 1129 of the Bankruptcy Code.  The terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order.  All acceptances and rejections previously cast for or against the Plan are hereby deemed to constitute acceptances or rejections of the Plan in the form attached to this Confirmation Order.

4.      Confirmation Order Binding on All Parties.  In accordance with section 1141(a) of the Bankruptcy Code and notwithstanding any otherwise applicable law, upon the occurrence of the Effective Date, the terms of the Plan and this Confirmation Order shall be binding upon, and inure to the benefit of: (a) the Debtors, (b) the Reorganized Debtors, (c) any and all holders of Claims or Interests (irrespective of whether such Claims or Interests are Impaired under the Plan, whether the holders of such Claims or Interests accepted, rejected or are

deemed to have accepted or rejected the Plan, or whether the holders of such Claims or Interests receive consideration under the Plan), (d) any other person giving, acquiring or receiving property under the Plan, (e) any and all non-Debtor parties to executory contracts or unexpired leases with any of the Debtors, and (f) the respective heirs, executors, administrators, trustees, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, guardians, successors or assigns, if any, of any of the foregoing.  On the Effective Date, all settlements, compromises, releases, waivers, discharges, exculpations and injunctions set forth in the Plan shall be effective and binding on all Persons.

        5.     <u>Notice</u>.  Notice of the Plan, the Exhibits, and all amendments and modifications thereto, the Disclosure Statement and the Solicitation Packages was proper and adequate.

        6.     <u>Objections</u>.  All objections and all reservations of rights that have not been withdrawn, waived or settled, pertaining to the Confirmation of the Plan are overruled on the merits.

        7.     <u>Effectiveness of All Actions</u>.  All actions contemplated by the Plan are hereby authorized and approved in all respects (subject to the provisions of the Plan).  The approvals and authorizations specifically set forth in this Confirmation Order are nonexclusive and are not intended to limit the authority of any Debtor or Reorganized Debtor or any officer or director thereof to take any and all actions necessary or appropriate to implement, effectuate and consummate the Plan, this Confirmation Order, the Transaction Documents and any and all documents or transactions contemplated by the Plan or this Confirmation Order.  Pursuant to this Confirmation Order, section 1142 of the Bankruptcy Code, section 303 of the Delaware General Corporate Law, any comparable provision of the business corporate laws of any other state and

any other applicable law, the Debtors and the Reorganized Debtors are authorized and empowered, without action of their respective stockholders or members or boards of directors or managers to take any and all such actions as any of their executive officers may determine are necessary or appropriate to implement, effectuate and consummate the Plan, this Confirmation Order, the Transaction Documents and any and all documents or transactions contemplated by the Plan or this Confirmation Order.

8.      <u>Revesting of Assets and Operation as of the Effective Date</u>.  Except as otherwise explicitly provided in the Plan, on the Effective Date, all property comprising the Estates shall revest in the Reorganized Debtors, free and clear of all Claims, Liens and Interests of any entity; <u>provided</u>, <u>however</u>, that with the exception of Liens securing Class 3 Credit Agreement Claims, nothing herein shall terminate, release or modify any validly perfected Lien. As of the Effective Date, each of the Reorganized Debtors may operate its business and use, acquire, and dispose of property and settle and compromise Claims without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and this Confirmation Order.

9.      <u>New Organizational Documents</u>.  On or immediately prior to the Effective Date, Reorganized Holdings shall, and is hereby authorized to, file its amended certificate of incorporation, which is attached to the Plan as Plan Exhibit H, with the Delaware Secretary of State.

10.     <u>Restructuring Transactions</u>.  The Transactions contemplated by Article V of the Plan and described in Plan Exhibits A, C, D, E and F and the Transaction Documents are approved, and the Debtors and Reorganized Debtors and their officers, managers and directors are authorized to execute such documents, including all Transaction Documents, and take such

actions as may be reasonably required in order to effectuate the Transactions provided by Article V of the Plan and Exhibits A, C, D, E and F.  Notwithstanding anything in the Plan to the contrary, each holder of a Class 3 Credit Agreement Claim that is issued New Common Stock in accordance with the Plan shall be deemed party to and bound by the Registration Rights Agreement without the need for execution or delivery by such holder.  Without limiting the generality of the foregoing, the Debtors are authorized to take any action necessary to document existing Intercompany Claims and amend and restate such claims to, among other things, extend their maturity dates.

          11.     Notwithstanding anything to the contrary in the Plan, Disclosure Statement and the Transaction Documents, the Debtors, subject to obtaining the prior written consent of Spyglass Consent Parties and the Administrative Agent (which consent shall be given or withheld in the sole and absolute discretion of the Spyglass Consent Parties and the Administrative Agent, respectively), may effectuate the transactions contemplated by the Plan, Disclosure Statement and the Transaction Documents in a manner that the Debtors, in consultation with the Spyglass Consent Parties and the Administrative Agent, determine is most efficient and cost-effective to the Reorganized Debtors and holders of Interests, including in a manner which would result in section 351 of the Internal Revenue Code not applying to the conversion of Class 3 Credit Agreement Claims by the Lenders, and thus would be a fully taxable exchange to Lenders that are otherwise subject to U.S. federal income tax on the conversion.  The steps taken by the Reorganized Debtors may include merging Holdings into Holdings II immediately after the issuance of New Common Stock to the Lenders, with holders of New Common Stock receiving equivalent equity interests in Holdings II in such merger,

and/or such other or different steps as may seem necessary or desirable to the Debtors, the Spyglass Consent Parties and the Administrative Agent.

12.     Cancellation of Interests.  On the Effective Date, all notes, instruments, certificates, and other documents evidencing the Interests in Holdings shall be canceled, terminated and extinguished and the obligations of the Debtors thereunder or in any way related thereto shall be discharged.

13.     Issuance of the New Common Stock.  Issuance of New Common Stock in accordance with the Plan is approved.  Each of the Debtors and the Reorganized Debtors is authorized and empowered, without further approval of this Court or any other party, to take such actions and to perform such acts as may be necessary, desirable or appropriate to implement the issuance of the New Common Stock in accordance with the Plan and to execute and deliver all agreements, documents, securities, instruments, and certificates relating thereto.

14.     The New Common Stock to be issued is hereby deemed issued as of the Effective Date regardless of the date on which the New Common Stock is actually distributed. All New Common Stock issued by the Reorganized Debtors pursuant to the provisions of the Plan is hereby deemed to be duly authorized and issued, fully paid and nonassessable.

15.     The issuance of options and other equity awards for New Common Stock in accordance with and as contemplated by the Plan and the Equity Incentive Plan is approved and each of the Debtors and the Reorganized Debtors is authorized and empowered, without further approval of this Court, to execute and perform all obligations under the Equity Incentive Plan.

16.     Cancellation of Credit Agreement and Interests in Holdings.  Except as provided in the Plan or in this Confirmation Order or for the purpose of evidencing a right to

distribution under the Plan or a contractual right to indemnification or reimbursement of the Administrative Agent against the Secured Lenders under the terms of the Credit Agreement, on the Effective Date, all notes, stock, instruments, certificates, agreements, side letters, fee letters and other documents evidencing or giving rise to Class 3 Credit Agreement Claims and Interests in Holdings shall be canceled, and the obligations of the Debtors thereunder or in any way related thereto shall be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote, or other approval or authorization by any Person. The holders of, or parties to, such notes, stock, instruments, certificates, agreements, side letters, fee letters, and other documents shall have no rights arising from or relating to such notes, stock, instruments, certificates, agreements, side letters, fee letters, and other documents or the cancellation thereof, except the rights provided pursuant to the Plan and this Confirmation Order

17.    <u>Exemption from Registration</u>.  The (i) offer by the Debtors and/or the Reorganized Debtors of the New Common Stock is exempt from the registration requirements of the Securities Act and similar state statutes pursuant to applicable securities law and (ii) sale and issuance by the Reorganized Debtors of the New Common Stock to holders of Class 3 Credit Agreement Claims is exempt from the registration requirements of the Securities Act and similar state statutes pursuant to section 1145 of the Bankruptcy Code.

18.    <u>Exit Credit Facility</u>.  On the Effective Date, the Reorganized Debtors, as applicable, by and through any of their executive officers, are authorized to (a) enter into the Exit Credit Facility and related documentation evidencing the obligations of the Reorganized Debtors thereunder, together with all guarantees, pledge and security documents, and laboratory

pledgeholder agreements, (b) execute, and the agent under the Exit Credit Facility is authorized to file, as applicable, such mortgages, control agreements, certificates, resolutions, financing statements, promissory notes, stock powers, intellectual property security agreements and other documentation and deliveries with respect to any of the foregoing and any other documents and instruments as the agent under the Exit Credit Facility reasonably requests, and (c) deliver insurance certificates and customary opinions (collectively, the documents in (a)-(c) and all other documents, instruments and agreements to be entered into, delivered or contemplated under the Exit Credit Facility, the "Exit Facility Documents"), and the Exit Facility Documents shall become effective in accordance with their terms on the Effective Date. On the Effective Date, all of the guarantee obligations, liens and security interests granted in accordance with the Exit Facility Documents are hereby deemed approved and shall be legal, valid, binding, enforceable, properly perfected and non-avoidable liens on the collateral in accordance with the terms of the Exit Facility Documents. All obligations of the Reorganized Debtors arising pursuant to the Exit Facility Documents are in exchange for fair and reasonably equivalent value and do not constitute a preferential transfer or fraudulent transfer or fraudulent conveyance under applicable federal or state laws and will not subject the lender parties to the Exit Credit Facility to any liability by reason of incurrence of such obligation or grant of such liens or security interests under applicable federal or state laws, including but not limited to successor or transferee liability.

19. <u>Section 1146(a) Waiver</u>. Pursuant to section 1146(a) of the Bankruptcy Code, any issuance, transfer, or exchange of any security under the Plan, including, but not limited to, any Exit Facility Documents, or the making or delivery of any instrument of transfer under the Plan shall not be taxed under any law imposing a stamp tax or other similar tax.

20.  Continuation of the Automatic Stay.  Except as otherwise expressly provided in the Plan, this Confirmation Order or a separate order of this Court, all injunctions or stays provided for in these Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect through and including the Effective Date.

**Assumption and Rejection of Executory Contracts and Unexpired Leases**

21.  Executory Contracts and Unexpired Leases.  Except for the Century City Leases, which shall be assumed or rejected by the deadline set forth in Section 7.3 of the Plan, on the Effective Date, all executory contracts or unexpired leases of the Debtors, unless such executory contract or unexpired lease was previously assumed or rejected or is subject to a pending motion to assume or reject as of the Confirmation Date, shall be deemed assumed as of the Confirmation Date (but subject to the occurrence of the Effective Date) in accordance with, and subject to, the provisions and requirements of section 1123(b)(2) of the Bankruptcy Code.

22.  All executory contracts or unexpired leases assumed by the Debtors pursuant to the Plan (the "Assumed Agreements") shall remain in full force and effect for the benefit of the Reorganized Debtors, as applicable, and be enforceable by the Reorganized Debtors, as applicable, in accordance with their terms notwithstanding any provision in such Assumed Agreements that prohibits, restricts or conditions such assumption, assignment or transfer.  Except for Liens held by the counterparty of an Assumed Agreement and subject to the rights of the counterparty of an Assumed Agreement under Section 7.1 of the Plan, the assumption of the Assumed Agreements shall be free and clear of all liens, encumbrances, pledges, mortgages, deeds of trust, security interests, claims, charges, options, rights of first refusal, easements, servitudes, proxies, voting trusts or agreements, and/or transfer restrictions

under any shareholder or similar agreement or encumbrance.  Any provision in the Assumed Agreements that purports to declare a breach or default based in whole or in part on the above-captioned cases is hereby deemed unenforceable, and the Assumed Agreements shall remain in full force and effect.  Any provision of any agreement or other document that permits a person to terminate or modify an agreement or to otherwise modify the rights of the Debtors based on the filing of the Chapter 11 Cases or the financial condition of the Debtors shall be unenforceable.

23.     Notwithstanding anything to the contrary in the Plan, the Debtors' defined benefit pension plans subject to the Employee Retirement Income Security Act ("ERISA"), including the MGM Retirement Plan, are not executory contracts.  The Debtors' and the Reorganized Debtors' obligations and rights under such benefit plans will survive confirmation of the Plan, subject to the terms and conditions of such benefit plans and ERISA.

**Discharge of Debtors, Releases and Injunctions**

24.     Discharge of Debtors.  Other than Claims arising from or related to the Transaction Documents and except as otherwise provided in the Plan or in this Confirmation Order, all consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims of any nature whatsoever against the Debtors or any of their assets or properties and, regardless of whether any property shall have been abandoned by order of the Bankruptcy Court, retained, or distributed pursuant to the Plan on account of such Claims, upon the Effective Date, the Debtors, and each of them, shall be deemed discharged and released under section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in section 502 of the Bankruptcy Code, whether or not (i) a proof of claim based upon such debt is filed or deemed filed under section

501 of the Bankruptcy Code, (ii) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code, (iii) a Claim based upon such debt is or has been disallowed by order of the Bankruptcy Court, or (iv) the holder of a Claim based upon such debt accepted the Plan.

25. As of the Effective Date, other than Claims arising from or related to the Transaction Documents and except as provided in the Plan or this Confirmation Order, all Persons shall be precluded from asserting against the Debtors or the Reorganized Debtors, any other or further Claims, debts, rights, causes of action, claims for relief, or liabilities relating to the Debtors or any Interest in the Debtors based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date. In accordance with the foregoing, other than with respect to Claims arising from or related to the Transaction Documents and except as provided in the Plan or this Confirmation Order, this Confirmation Order shall be a judicial determination of discharge of all such Claims and other debts and liabilities against the Debtors, and the termination of all such Interests, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtors at any time, to the extent that such judgment relates to a discharged Claim or a terminated Interest.

26. <u>Releases, Limitations of Liability and Indemnification</u>. The releases, exculpation and limitation of liability provisions, and indemnification obligations set forth in Article IX of the Plan are incorporated in this Confirmation Order as if set forth in full herein and are hereby approved and shall be, and hereby are, effective and binding, subject to the respective terms thereof, on all persons and entities.

27. <u>Injunction</u>. Except as provided in the Plan or this Confirmation Order, from and after the Effective Date, all Persons that have held, currently hold, may hold, or allege

that they hold, a Claim, Interest, obligation, suit, judgment, damage, demand, debt, right, cause of action, or liability that is released, terminated, exculpated, or discharged under Article IX of the Plan, along with their respective current and former employees, agents, officers, directors, managers, principals, affiliates, shareholders, and members are permanently enjoined from taking any of the following actions against the Debtors, the Reorganized Debtors, the Exculpated Parties, and their respective agents, officers, directors, managers, employees, representatives, advisors, attorneys, affiliates, shareholders, or members, or any of their successors or assigns or any of their respective property on account of any such Claim, Interest, obligation, suit, judgment, damage, demand, debt, right, cause of action, or liability: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Lien or encumbrance; (iv) asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to any released Person; or (v) commencing or continuing any action, in each such case in any manner, in any place, or against any Person that does not comply with or is inconsistent with the provisions of the Plan or this Confirmation Order.

28. <u>U.S. Government</u>. Notwithstanding anything contained in the Plan or this Confirmation Order to the contrary, as to the United States, its agencies, departments, or agents (collectively, the "<u>U.S. Government</u>"), nothing in the Plan or this Confirmation Order shall discharge, release, or otherwise preclude: (1) any liability of the Debtors or Reorganized Debtors arising on or after the Effective Date to the U.S. Government; (2) any liability to the U.S. Government that is not a "claim" within the meaning of section 101(5) of the Bankruptcy Code; (3) any valid right of setoff or recoupment of the U.S. Government against any of the Debtors; or

(4) any liability of the Debtors or Reorganized Debtors under environmental law to the U.S. Government as the owner or operator of property that such entity owns or operates after the Effective Date. Moreover, nothing in the Plan or this Confirmation Order shall release or exculpate any non-debtor, including any Released Party or Exculpated Party, from any liability to the U.S. Government, including but not limited to any liabilities arising under the Internal Revenue Code, the environmental laws, or the criminal laws against the Released Parties or the Exculpated Parties, nor shall anything in this Confirmation Order or the Plan enjoin the U.S. Government from bringing any claim, suit, action or other proceeding against the Released Parties or Exculpated Parties for any liability whatsoever; provided, however, that the foregoing sentence shall not limit the scope of discharge granted to the Debtors or Reorganized Debtors under sections 524 and 1141 of the Bankruptcy Code.

**Plan Modifications**

29. <u>Technical Adjustments</u>. Prior to the Effective Date, the Debtors, subject to the written consent of the Administrative Agent and the Spyglass Consent Parties, may make appropriate technical adjustments and modifications to the Plan and Transaction Documents without further order or approval of this Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Interests.

30. <u>Plan Modifications</u>. The Plan is hereby modified as follows:

(a) *Class 2 – Other Secured Claims*. The treatment of Class 2 Other Secured Claims is hereby amended by deleting the alternative treatments under Option B and Option C.

(b) *Class 5 – General Unsecured Claims*. The following sentence is inserted at the end of the "treatment" section of Class 5. "Each holder of a General Unsecured

Claim shall be entitled to post-petition interest to the extent necessary to leave such Holder's General Unsecured Claim Unimpaired."

*Conditions to the Effective Date*.  Section 8.2 of the Plan is modified by the addition of the following paragraph:  "The holders of Class 3 Credit Agreement Claims shall be informed, by way of an Intralinks posting made by the Administrative Agent of the provisions of this paragraph 30 within two (2) Business Days of the date of this Confirmation Order, that under paragraph 11 of this Confirmation Order the transactions contemplated by the Plan and the Transaction Documents may be structured in a way that would make the conversion of debt to equity under Section 3.3 of the Plan a taxable event for holders of Class 3 Credit Agreement Claims and as a result thereof each Secured Lender that is otherwise subject to U.S. federal income taxation, would recognize a gain or loss, as the case may be, for applicable income tax purposes and inform the Secured Lenders of their ability to indicate whether they would want to change their vote from accept to reject were the Company to effectuate such alternative tax treatment (an "<u>Indication of Desire To Change Vote</u>").  Secured Lenders shall have seven (7) calendar days from the date of such posting (the "<u>Indication to Change Vote Deadline</u>") to make a written Indication of Desire to Change Vote in the manner directed in such posting to counsel for the Administrative Agent.  One day after the Indication to Change Vote Deadline, the voting agent, Donlin Recano, relying on statements of counsel to the Administrative Agent, shall file a certification (the "<u>Certification</u>") with the Bankruptcy Court setting forth that either (i) no Indication of Desire To Change Vote was received or (ii) assuming that each Secured Lender that made an Indication of Desire To Change Vote was permitted to change its prior acceptance of the Plan to a vote to reject the Plan were it to include the alternate tax treatment, a tabulation as to the number and amount of holders of Class 3 Credit Agreement Claims that submitted an Indication of Desire To Change Vote.  To the extent that the Certification provides that no Secured Lender desired to change its vote or that the Certification indicates that Class 3 would have accepted the Plan under section 1126 of the Bankruptcy Code even if each Secured Lender that submitted an Indication of Desire To Change Vote was deemed to have rejected the Plan, the Plan may be effectuated without further order of the Court.  Notwithstanding the foregoing, and regardless of number or amount of Indications of Desire to Change Vote, the Debtors may, in their sole discretion, proceed to effectuate the Plan in accordance with the tax treatment set forth in the Transaction Documents and described in the Disclosure Statement."

## Notice and Other Provisions

31.  <u>Notice of Confirmation Order and Occurrence of Effective Date</u>.  On or before the fourteenth (14th) day following the occurrence of the Effective Date, the Debtors shall serve notice of entry of this Confirmation Order and occurrence of the Effective Date pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c), on (a) the U.S. Trustee for the Southern District of New York, (b) counsel to the Administrative Agent, (c) the parties listed in the consolidated list of fifty (50) largest unsecured creditors filed by the Debtors in these bankruptcy

cases, (d) all holders of Claims and Interests, and (e) other parties in interest, by causing a notice

of this Confirmation Order and the occurrence of the Effective Date in substantially the form of

the notice annexed hereto as <u>Exhibit 3</u>, which form is hereby approved, to be delivered to such

parties by first class mail, postage prepaid.  Notice need not be given or served under the

Bankruptcy Code, the Bankruptcy Rules, or this Confirmation Order to any Person to whom the

Debtors mailed a notice of the Combined Hearing, but received such notice returned marked

"undeliverable as addressed," "moved - left no forwarding address," "forwarding order expired,"

or similar mark, unless the Debtors have been informed in writing by such Person of that

Person's new address.  The notice described herein is adequate and appropriate under the

particular circumstances of the Chapter 11 Cases, and no other or further notice of this

Confirmation Order or the occurrence of the Effective Date is necessary.

      32.    <u>Failure to Consummate Plan and Substantial Consummation</u>.  If the

Effective Date does not occur, then the Plan, any settlement or compromise embodied in the Plan

(including the fixing or limiting to an amount certain any Claim or Class of Claims), the

assumption or rejection of executory contracts or unexpired leases under the Plan, and any

document or agreement executed pursuant to the Plan, shall be null and void.  In such event,

nothing contained in the Plan or this Confirmation Order, and no acts taken in preparation for

consummation of the Plan, shall, or shall be deemed to, (a) constitute a waiver or release of any

Claims by or against, or Interests in, the Debtors or any other Person, (b) prejudice in any

manner the rights of the Debtors or any Person in any further proceedings involving the Debtors,

(c) constitute an admission of any kind by the Debtors or any other Person, or (d) be construed as

a finding of fact or conclusion of law of any kind.

33. <u>References to Plan Provisions</u>.  The failure to include or specifically reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be confirmed in its entirety.

34. <u>Exhibits</u>.  Each reference in this Confirmation Order, the Findings of Fact and Conclusions of Law, or in the Plan to a document, agreement or summary description that is in the form attached as an Exhibit to the Plan shall be deemed to be a reference to such document, agreement or summary description in substantially the form of the latest version of such document, agreement or summary description filed with the Court (whether filed as an attachment to the Plan or filed separately).

35. <u>Plan and Confirmation Order Mutually Dependent</u>.  The provisions of this Confirmation Order and the provisions of the Plan are hereby deemed nonseverable and mutually dependent.

36. <u>Confirmation Order Supersedes</u>.  It is hereby ordered that this Confirmation Order shall supersede any orders of this Court issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order.

37. <u>Conflicts Between Confirmation Order and Plan</u>.  The provisions of the Plan and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; <u>provided</u>, <u>however</u>, that if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and any such provision of this Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

38.     <u>Retention of Jurisdiction</u>.  Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, this Court, except as otherwise provided in the Plan or herein, shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law.

39.     <u>Final Order</u>.  The stay set forth in Bankruptcy Rule 3020(e) is hereby waived.  This Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

40.    <u>Immediate Effectiveness</u>.  Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, 8001, 8002 or otherwise, immediately upon the entry of this Confirmation Order, the terms of this Confirmation Order shall be, and hereby are, immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, any and all holders of Claims or Interests (irrespective of whether such Claims or Interests are Impaired under the Plan or whether the holders of such Claims or Interests accepted, were deemed to have accepted, rejected or were deemed to have rejected the Plan), any trustees or examiners appointed in the Chapter 11 Cases, all persons and entities that are party to or subject to the releases, discharges, injunctions, stays and exculpations described in the Plan or herein, each person or entity acquiring property under the Plan, and any and all non-Debtor parties to executory contracts and unexpired leases with the Debtors and the respective heirs, executors, administrators, successors or assigns, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, or guardians, if any, of any of the foregoing.

Dated: New York, New York
        December 6, 2010

/s/ *Stuart M. Bernstein*
UNITED STATES BANKRUPTCY JUDGE

**Issued at 8:00 a.m.**